UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THERESA WESTON SAUNDERS,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    AND<br><br>NATWAR M. GANDHI, *individually and in his official capacity as District of Columbia Chief Financial Officer*,<br><br>    AND<br><br>EARL C. CABBELL, *individually and in his official capacity as Supervisor*,<br><br>    Defendants. | Civil Action No.  02-1803 (CKK) |

**MEMORANDUM OPINION**
(October 25, 2005)

Plaintiff Theresa W. Saunders brings this action against Defendants the District of Columbia, Natwar M. Gandhi, individually and in his official capacity as District of Columbia Chief Financial Officer, and Earl C. Cabbell, individually and in his official capacity as Supervisor. Plaintiff alleges that Defendants unlawfully terminated her employment in the Office of the Chief Financial Officer based on her race in violation of 42 U.S.C. §§ 1981, 1982, 1983, and 1985; her gender and age in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; and the Federal False Claims Act, 31 U.S.C. §3730.  Before this Court is Defendant District of Columbia's 12(b)(6) Motion to Dismiss Plaintiff's Complaint for failure to state a claim.  Based on the reasons set forth in this memorandum, Defendant District of Columbia's Motion to Dismiss is GRANTED in part,

DENIED in part, DENIED WITHOUT PREJUDICE in part, and HELD IN ABEYANCE in part.

## I: BACKGROUND

This suit arises from the District of Columbia's termination of Plaintiff's employment in 2000. Amended Complaint ("Am. Compl.") ¶ 26. Plaintiff is an African-American female, born October 11, 1954, who had been hired by the District of Columbia in August of 1982. Am. Compl. ¶¶ 5, 10. While employed by the District of Columbia, Plaintiff served as financial manager, controller, and Chief Financial Officer ("CFO"). Am. Compl. ¶ 16.

In 1999, Plaintiff was asked by then District of Columbia CFO Valerie Holt to become Acting CFO for the Office of the Chief Technology Officer ("OCTO"), headed by Chief Technology Officer ("CTO") Suzanne Peck. Am. Compl. ¶ 13. While serving as Acting CFO for OCTO, Plaintiff alleges to have discovered and reported on numerous contract payment violations as well as an overall lack of internal control in management of funds connected to the District's Y2K project. Am. Compl. ¶ 14. In September 1999, Plaintiff forwarded to Ms. Peck a memorandum recommending a disallowance of more than $13 million against a claim filed by IBM. Am. Compl. ¶ 47. While Ms. Peck acknowledged the recommendation, no action was taken. Am. Compl. ¶ 47. Plaintiff alleges that after reporting on these inconsistencies, she became the target of reprisals and that Ms. Peck called for Plaintiff to be removed from OCTO and any OCFO position. Am. Compl. ¶ 14. Plaintiff was reassigned as CFO of the District of Columbia Lottery and Charitable Games Control Board ("D.C. Lottery"), where she worked between October of 1999 and May of 2000. Am. Compl. ¶ 10, 14.

In late May of 2000, Plaintiff was contacted by Stanley Jackson, the District of Columbia's Chief of Staff for the Chief Financial Officer. Am. Compl. ¶ 20. Mr. Jackson told Plaintiff that she was being considered as a candidate to become a member of the Special Projects Team ("SPT"),

headed up by Defendant Earl Cabbell.  Am. Compl. ¶ 20.  On June 19, 2000, Plaintiff was informed by Mr. Jackson that she was being transferred to the SPT.  Am. Compl. ¶ 21.[1]  When Plaintiff informed Mr. Jackson that she was not interested in the staff position because it would require her to change from a management position to a staff position, Mr. Jackson told her that "it was either take the transfer or have no job."  Am. Compl. ¶ 21.  As a result of the transfer from CFO for the D.C. Lottery to SPT staff member, Plaintiff's salary was reduced.  Am. Compl. ¶ 21.

Plaintiff initially worked part-time at both SPT and the D.C. Lottery in order to ensure a smooth transition at the D.C. Lottery.  Am. Compl. ¶ 22.  Plaintiff reported to SPT full-time beginning on June 30, 2000 and worked at SPT for approximately three weeks.  Am. Compl. ¶¶ 24, 25.  On July 25, 2000, Plaintiff was asked to meet with Lou Parker, who presented her with a separation letter, dated July 21, 2000, which was to be effective 30 days after receipt.  Am. Compl. ¶¶ 24, 26.  Plaintiff was also then informed that she was immediately placed on 30-days paid administrative leave.  Am. Compl. ¶ 26.  The separation letter did not include a reason for her termination, it merely stated "[t]hat it is necessary to discontinue your employment with the Office of the Chief Financial Officer (OCFO) for the District of Columbia."  Am. Compl. ¶ 26.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 30, 2001 alleging sex discrimination.  Am. Compl. ¶ 3; Plaintiff's Exhibit ("Pl.'s Exh.") A.[2]

---

[1] There is apparently a numbering mistake in the Amended Complaint as there are two Paragraphs 21.  As used in this Memorandum Opinion, Paragraph 21 refers to the second Paragraph 21.

[2] Plaintiff's EEOC sex discrimination charge is reproduced here:
I.   I was demoted to the Office of Financial Operations and Systems from the Office of the D.C. Lottery and Charitable Games on June 19, 2000 and placed on 30 days Administrative Leave.  I was not given supervisory authority and a job title.  Before a job title was given, I was discharged on July 21, 2000.  I have been an employee for 18 years.
II.  Lou Parker, Director of Human Resources, Office of the Chief Financial Office, gave me a discharge letter on July 25, 2000.  There was no reason for my discharge.
III. I believe I was demoted and discharged because of my gender, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff alleges that her termination was both "directly and solely attributable" to her gender and her race and "pretextual in that the true reason for [her] termination was that the Defendants were aware that she knew of the Defendants' sloppy accounting procedures and fraudulent activities." Am. Compl. ¶¶ 35, 36. Plaintiff states that both Defendant Gandhi and Defendant Cabbell "did not believe in the appointment of females to CFO positions."[3] Am. Compl. ¶ 17. Plaintiff states that after her termination, she was replaced by a male. Am. Compl. ¶ 27.

Plaintiff's Complaint essentially sets forth six counts that can be placed into three categories.[4] First, Plaintiff alleges racial discrimination based on 42 U.S.C. §§ 1981, 1982, 1983, and 1985. Am. Compl. ¶¶ 14, 48.[5] Plaintiff's § 1981 claim is based on the discrimination she suffered in allegedly not being permitted to report to District of Columbia CFO Mr. Gandhi because of her race. Am. Compl. ¶ 30; Plaintiff's Memorandum in Opposition to Defendant District Columbia's [sic] Memorandum of Points and Authorities in Support of the Motion to Dismiss ("Opp'n") at 16. Plaintiff's § 1982 claim is based on her discharge from the OCFO. Am. Compl. ¶ 36; Opp'n at 17. Plaintiff's § 1983 claim is based on the alleged deprivation of her property and liberty interests when she was terminated in violation of the Fifth Amendment. Am. Compl. ¶¶ 42,

---

Pl.'s Exh. A at 1. Plaintiff's EEOC discrimination charge also included a charge of age discrimination. Pl.'s Exh. A at 5. It reads as follows:

> I believe that I have been discriminated against because of my age, 46 in violation of the Age Discrimination in Employment Act of 1967, as amended.

Neither Defendant's Motion nor Plaintiff's Opposition address this charge.

[3] Neither Mr. Gandhi nor Mr. Cabbell are parties to this Motion to Dismiss.

[4] Plaintiff does not specifically enumerate the Counts in her Complaint, but they can be inferred from the set of facts and allegations she sets forth.

[5] The unnumbered paragraph following paragraph 47 in the Amended Complaint will be referred to as paragraph 48 in this memorandum opinion.

43; Opp'n at 17–18. Plaintiff's Amended Complaint alleges a § 1985 claim based on Defendants' conspiracy to deprive her of her rights. Am. Compl. at 14. Plaintiff alleges that her discharge constituted gender and age discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Am. Compl. ¶¶ 36, 48; Opp'n at 19. Plaintiff alleges that her termination was a direct result of her raising the issue of improper and fraudulent business practices in violation of the Federal False Claims Act, 31 U.S.C. § 3730(h). Am. Compl. ¶¶ 35, 36. For the reasons set forth below, Defendant District of Columbia's Motion to Dismiss is granted in part, denied in part, denied without prejudice in part, and held in abeyance in part.

## II: LEGAL STANDARDS

Under Rule 12(b)(6), a motion to dismiss should be granted only if the "plaintiff[] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Shuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). When considering a motion to dismiss, the Court must resolve all factual doubts in favor of the plaintiff and allow the plaintiff the benefit of all inferences. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Notwithstanding this liberal construction, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Since Plaintiff has attached exhibits to her Complaint, those exhibits are considered by this Court to be part of the Complaint, and will be considered in determining the sufficiency of the Complaint. Fed. R. Civ. P. 10(c).

## III: DISCUSSION

A.   *Civil Rights Claims*

Plaintiff alleges civil rights violations of 42 U.S.C. §§ 1981 and 1982 based on race discrimination, 42 U.S.C. § 1983 based on a deprivation of her liberty and property interest without due process of law in violation of the Fifth Amendment, and 42 U.S.C. § 1985 based on a conspiracy to deprive her of her rights and privileges. For the reasons set forth below, Defendant's Motion to Dismiss is denied as to Plaintiff's § 1981 claim, granted as to her §§ 1982 and 1985 claims, and denied without prejudice as to her § 1983 claim.

    *1.    42 U.S.C. § 1981 Claim*

Defendant's primary argument in support of its Motion to Dismiss Plaintiff's § 1981 claim is that Plaintiff failed to make out a claim of race discrimination in her Complaint and pleaded only gender discrimination. Defendant District of Columbia's Memorandum of Points and Authorities in Support of the Motion to Dismiss ("Memo") at 5. Defendant relies on case law, none of which is from this Circuit or the District of Columbia, indicating that when an attached document contradicts statements made in a Complaint, the document controls. Memo at 4 n.2; Reply Brief in Support of Defendant's Motion to Dismiss ("Reply") at 1–2. Defendant argues that Plaintiff's Exhibit A, Plaintiff's EEOC discrimination charge, alleges only gender discrimination, not race discrimination. Memo at 4. Therefore, Defendant argues, Exhibit A is controlling and contradicts Plaintiff's allegations of race discrimination in her Complaint, resulting only in an allegation of gender discrimination, not race discrimination. *Id*. If Defendant's argument is to be accepted, this Court would have to dismiss Plaintiff's § 1981 claim because § 1981 is not a source of redress for anything other than race discrimination. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (stating that "[g]ender claims are not cognizable under § 1981").

However, this Court finds that Defendant's argument fails for two reasons. First, Plaintiff

explicitly states in her Complaint that her § 1981 claim is based on race and not gender discrimination. Am. Compl. at 14. Therefore Defendant's argument that § 1981 does not apply to gender discrimination lacks merit.

Second, there is no requirement in this Circuit that a § 1981 claim for race discrimination be first made in an EEOC discrimination charge; therefore the Complaint and Exhibit A are not contradictory. In *Lamont v. Forman Bros., Inc.*, the court rejected defendant's argument that issues not first raised before the EEOC could not later be raised in an § 1981 claim. *Lamont v. Forman Bros., Inc.*, 410 F. Supp. 912, 918 (D.D.C. 1976). In rejecting this argument the court relied on the Supreme Court's holding in *Johnson v. Railway Express Agency, Inc.*, which emphasized "the complete 'independence of the avenues of relief respectively available under Title VII and . . . § 1981.'" *Lamont*, 410 F. Supp at 918 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975)). While Defendant here makes a slightly different argument, that Plaintiff's failure to allege race discrimination in her March 30, 2001 EEOC discrimination charge contradicts her later allegation of race discrimination in the Complaint, *Lamont* and *Johnson* are instructive. If § 1981 claims do not need to be exhausted through the EEOC process, then Plaintiff's inclusion of the § 1981 claim in her Complaint does not contradict her EEOC complaint in Exhibit A. Plaintiff's failure to make an EEOC race discrimination charge therefore does not bar her from alleging race discrimination in the Complaint. As a result, Defendant's argument fails and the Motion to Dismiss is denied as to Plaintiff's § 1981 claim.

    2.    *42 U.S.C. § 1982 Claim*

Defendant makes two arguments in support of its Motion to Dismiss Plaintiff's § 1982 claim. Memo at 6–7. First, as in its argument regarding § 1981, Defendant claims that Plaintiff did not make out a claim of racial discrimination because her attached EEOC discrimination charge did

not include race discrimination. Memo at 4, 7. However, as with Plaintiff's § 1981 claim, Plaintiff clearly indicates that she is bringing a race discrimination claim and not a gender discrimination claim under § 1982. Am. Compl. ¶ 48. Therefore, Defendant's argument that § 1982 applies only to race discrimination and not gender discrimination is not applicable.

However, Defendant also argues that Plaintiff's § 1982 claim fails because § 1982 is not applicable to employment discrimination. Memo at 6. Plaintiff agrees that § 1982 does not apply to employment discrimination claims; however she asserts that "the Amended Complaint includes more than the employment discrimination claim." Opp'n at 17. To support this assertion, Plaintiff refers the Court back to the entire fact section of her Amended Complaint. Opp'n at 17. The referenced section does include more than just an employment discrimination claim–it also includes an alleged Federal False Claims Act claim. However, none of the facts asserted in this section make out a cognizable claim of race discrimination under § 1982. Section 1982 reads "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Plaintiff fails to allege that Defendant rendered her unable to participate in any of the enumerated activities of § 1982 either in the Amended Complaint or in her pleadings. Defendant's Motion to Dismiss Plaintiff's § 1982 claim is therefore granted.

   3.   *42 U.S.C. § 1983 Claim*

Defendant makes two primary arguments in support of its Motion to Dismiss Plaintiff's § 1983 claim.[6] Memo at 7–8. First, Defendant claims that Plaintiff improperly pleaded deprivation

---

[6] In her Amended Complaint and Opposition, Plaintiff also alleges as a basis of her § 1983 claim that she was deprived of a liberty interest without Due Process. Am. Compl. ¶ 43; Opp'n at 17–18. Defendant failed to address this argument in either its Motion to Dismiss or its Reply. Therefore, the liberty interest argument will not be addressed here, and Defendant will not be given the opportunity to address this argument in additional pleadings.

of due process under the Fourteenth Amendment because the Fifth Amendment applies to the District of Columbia. Memo at 7–8; *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991). However, the Amended Complaint clearly states that Plaintiff alleges deprivation of due process as to her property right in her employment under the Fifth Amendment. Am. Compl. ¶ 42. Defendant's argument therefore lacks merit.

Defendant's second argument is that Plaintiff did not have a property interest in her employment at the OCFO. Memo at 8. Defendant bases this argument on three cases: *District Council 20 v. District of Columbia*, No. Civ.A. 97-0185(EGS), 1997 WL 446254 (D.D.C.); *Alexis v. District of Columbia*, No. Civ.A. 98-0151 RMU, 1999 WL 680384 (D.D.C.); and *Leonard v. District of Columbia*, 794 A.2d 618 (D.C. 2002). It is true that each of these cases supports Defendant's assertion that OCFO employees are at will employees as to whom the property rights granted by the Comprehensive Merit Personnel Act ("CMPA") did not apply. *District Council 20*, 1997 WL 446254, at * 7 (holding that OCFO employees "did not have a protected property interest in their employment at the time they were discharged"); *Alexis*, 1999 WL 680384, at *3; *Leonard*, 794 A.2d at 626 (finding OCFO employees had been converted to "at will" employees).

However, the events giving rise to the cases above either explicitly or impliedly occurred prior to September 30, 1997. This is significant because each of the cited cases relies on Section 152 of a 1996 appropriations bill titled the Omnibus Consolidated Rescission and Appropriations Act of 1996 ("OCRA"). Pub. L. No. 104-134, 110 Stat. 1321 (1996). Section 152(a) of this Act, provides:

> Notwithstanding any other provision of law, for the *fiscal years ending September 30, 1996 and September 30, 1997—*
> (a) the heads and all personnel of the following offices, together with all other District

> of Columbia executive branch accounting, budget, and financial management personnel, shall be appointed by, shall serve at the pleasure of, and shall act under the direction and control of the Chief Financial Officer:
> The Office of the Treasurer.
> The Controller of the District of Columbia.
> The Office of the Budget.
> The Office of Financial Information Services.
> The Department of Finance and Revenue.
> The District of Columbia Financial Responsibility and Management Assistance Authority established pursuant to Public Law 104-8, approved April 17, 1995, may remove such individuals from office for cause, after consultation with the Mayor and the Chief Financial Officer.

OCRA § 152(a), Pub. L. No. 104-134, 110 Stat. 132 (emphasis added).  It is undisputed that Plaintiff was discharged from the OCFO in 2000.  Plaintiff, however, does not contest Defendant's reliance upon the abovementioned cases in her Opposition.  Due to a failure to fully brief the application of OCRA § 152(a) to Plaintiff's § 1983 claim, the Court will deny Defendant's Motion to Dismiss without prejudice exclusively to allow Defendant to fully brief this argument should there be a legal basis to claim that Plaintiff was an at-will employee.  Defendant may submit an additional briefing to the Court on this point by November 28, 2005.  If Defendant fails to submit a pleading by November 28, 2005, addressing the above deficiency, the Court will deny Defendant's Motion to Dismiss with respect to Plaintiff's § 1983 claim.  If Defendant does submit a pleading by November 28, 2005, Plaintiff's Opposition to said pleading will be due to the Court by December 12, 2005, and Defendant's Reply will be due to the Court by December 19, 2005.

    4.    *42 U.S.C. § 1985 Claim*

Plaintiff agrees to the dismissal of her § 1985 claim.  Opp'n at 18.  Therefore Defendant's Motion to Dismiss Plaintiff's § 1985 claim is granted.

    B.    *Title VII Gender Discrimination Claim*

Title VII sets forth a series of deadlines that must be met in order to have a properly filed

Title VII claim. 42 U.S.C. § 2000e-5. When there is a state agency that exists in order to handle alleged unlawful employment practice claims, the complainant must wait 60 days "after proceedings have been commenced under the State or local law" before filing a discrimination charge with the EEOC, "unless such proceedings have been earlier terminated." 42 U.S.C. § 2000e-5(c). It is not contested that the District of Columbia Office of Human Rights ("OHR") is the agency given the power in the District of Columbia to deal with unlawful employment claims. *See* Pl.'s Exh. A (giving OHR as the state or local agency on the EEOC discrimination charge). Further, when the complainant has initiated proceedings with the State agency, the complainant has 300 days from the date of the occurrence of the alleged unlawful employment practice to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). The Supreme Court has determined that the result of the 60-day deferral period on the 300-day limitation for filing a EEOC charge means that "a complainant must file a charge with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory event in order to ensure that it may be filed with the EEOC within the 300-day limit." *Equal Employment Opportunity Comm'n v. Commercial Office Prod. Co.*, 486 U.S. 107, 111 (1988) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n.16 (1980), for the rule).

Defendant moves to dismiss Plaintiff's Title VII gender discrimination claim because it is time barred. Memo at 11. Defendant argues that the statute of limitations for filing an EEOC charge began to run on July 25, 2000, the date upon which Plaintiff was notified of her termination. Memo at 11; Am. Compl. ¶¶ 26, 33. Plaintiff did not file her EEOC charge until March 30, 2001. Am. Compl. ¶ 3; Pl.'s Exh. A; Memo at 13. In *Chardon v. Fernandez*, the Supreme Court affirmed its holding in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), when it determined that the "proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of

the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).  In *Ricks*, a Title VII action was deemed time-barred because Ricks filed his claim after the statute of limitations had run, using his receipt of a terminal contract as the event from which the limitations period commenced.

Plaintiff does not contest that she was notified of her termination on July 25, 2000.  Opp'n at 19.  She does contend, however, that because she "continued to work and continued to experience discrimination the Defendant's violations were continuing."  Opp'n at 19.  However, Plaintiff's argument is contradicted by her own Amended Complaint.  In her Amended Complaint, Plaintiff claims that the notification letter she was given on July 25, 2000 made her termination effective 30 days later and that she was immediately placed on 30-days paid administrative leave.  Am. Compl. ¶ 26.  Plaintiff therefore did not work past July 25, 2000 and thus could not have experienced any new discriminatory acts.  The Supreme Court in *Ricks* noted that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257.  In order to properly allege a continuing violation, Plaintiff would have had to allege a present violation after receipt of the notification letter, not just the effects of a past violation.  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558-59 (1977).  Given that Plaintiff's own Amended Complaint states that she was placed on immediate 30-days paid administrative leave by the same letter that also notified her of her termination 30 days hence, Plaintiff did not allege a violation after her notification of termination.  Therefore, the proper date on which the 300-day statute of limitations to file with the EEOC began to run was July 25, 2000, the date of her notification.

However, the EEOC filing deadlines are altered by the presence of a state agency like the OHR.  42 U.S.C. § 2000e-5(e).  Unlike in *Commercial Office Products*, neither party in the instant case alleges that OHR and EEOC had a workshare agreement in effect at the time of Plaintiff's

filing of her EEOC discrimination charge. *See* Memo at 13 n.4 (noting the existence of a workshare agreement between EEOC and OHR effective between October 1, 1999 and September 30, 2000); Opp'n at 19 (failing to allege the existence of a workshare agreement at the time of filing her EEOC discrimination charge); *Commercial Office Products*, 486 U.S. at 107, 112, 125 (noting the existence of a workshare agreement and holding that the waiver of the state agency's 60-day deferral period under the workshare agreement "'terminated' its proceedings within [the] 300-day limit"). The lack of an effective workshare agreement waiving OHR's 60-day deferral period thus means that Plaintiff's discrimination charge must have been filed within 240 days of the alleged discriminatory act–on or before March 22, 2001. Since the charge was filed first with the EEOC, the EEOC would have had to refer the charge to OHR and given it 60 days to remedy the act before the EEOC could have taken action. 42 U.S.C. § 2000e-5(d). Thus if the charge had been filed within 240 days of the alleged discriminatory act, EEOC would have been able to act within the statutorily prescribed 300-day limit. Due to the undisputed fact that the charge was not filed until March 30, 2001, 248 days after Plaintiff was notified of her termination, Plaintiff's Title VII gender discrimination claim is time-barred. While it should be noted that "if the complainant does not file within 240 days, the charge may still be timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days," this exception did not materialize in this case. *Commercial Office Products*, 486 U.S. at 111–12. Defendant's Motion to Dismiss Plaintiff's Title VII claim is granted.

    C.    *Federal False Claims Act Claim*

Plaintiff's final claim is brought under the Federal False Claims Act, 31 U.S.C. § 3730. Am. Compl. ¶¶ 38, 46. Defendant originally moved to dismiss this claim based on untimeliness. However, Defendant misconstrued Plaintiff's claim as one brought under D.C. Code § 2-308.16(b)

and moved to dismiss it based on the one-year statute of limitation contained in the District of Columbia Whistleblower Protection Act. Memo at 10, 11. In addition, Defendant argues that Plaintiff failed to assert that she disclosed information relating to a false claims action that was, or was going to be, filed as required by the statute. Memo at 10–11. In her Opposition, Plaintiff noted that Defendant's arguments were based on the wrong statute and that under the Federal False Claims Act, there is a four-year statute of limitations such that the claim was not time barred. Opp'n at 18–19.[7]

Plaintiff does not address the substantive deficiencies (that the claim does not allege a disclosure of information related to a Federal False Claims Act claim that was or was going to be filed) raised by Defendant. In its Reply, Defendant states that Plaintiff "does not allege that she disclosed information 'in furtherance of an action under this section.'" Reply at 2 (quoting 31 U.S.C. § 3730(h)). Although Defendant addresses a similar substantive deficiency of the Amended Complaint in its Memorandum, that substantive deficiency was based on D.C. law, not on the Federal False Claims Act. Memo at 10–11. A party may not make a key argument for the first time in its reply because it gives the non-moving party no opportunity to respond to the argument. *See Goldring v. District of Columbia*, 416 F.3d 70, 77 n.4 (D.C. Cir. 2005) (refusing to consider one of defendant's arguments because it was raised for the first time in its reply brief) (citing *Presbyterian Med. Ctr. of the Univ. of Penn. Health Sys. v. Shalala*, 170 F.3d 1146, 1152 (D.C. Cir. 1999)).

There are other key issues that were not addressed by both parties related to the Plaintiff's Federal False Claims Act claim. Due to a failure to fully brief the claim on the following issues,

---

[7] Plaintiff failed to provide this Court with a citation from whence this statute of limitations was determined, but under 31 U.S.C. § 3731(b), § 3730 actions may be brought within six years of the alleged violation or within three years after the date when the responsible government official should have known of the material facts relevant to the action. In either case, under the Federal False Claims Act, Plaintiff is well within the statute of limitations.

Defendant's Motion to Dismiss Plaintiff's Federal False Claims Act claim is held in abeyance to give the parties an opportunity to address the following outstanding issues. First, the parties must indicate to the Court the applicable statute of limitations. Second, Plaintiff must show that she followed the procedures set forth in 31 U.S.C. § 3730(b) and (c) for filing an action under the Federal False Claims Act. For example, when a Federal False Claims Act claim is made by a private person, that action must be brought in the name of the United States Government. 31 U.S.C. § 3730(b)(1). Furthermore, a copy of the complaint in such an action must be served on the United States Government. 31 U.S.C. § 3730(b)(2). Plaintiff must also show that the United States Government elected not to proceed with the action before she will be permitted to proceed on the action solely in her own name. 31 U.S.C. § 3730(c)(3). Finally, Plaintiff must show that she was "discharged, demoted, suspended, threatened, harassed, or in any other matter discriminated against" by her employer because of her lawful actions "including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section . . . ." 31 U.S.C. § 3730(h). Defendant also needs to brief whether it is has standing to move for dismissal of this claim. It is unclear whether the funds Plaintiff determined to be fraudulently disbursed to IBM were federal funds or District funds. Am. Compl. ¶ 47. Plaintiff may submit an additional pleading exclusively to address the deficiencies in her Federal False Claims Act claim to the Court by November 28, 2005. If Plaintiff fails to submit a pleading by November 28, 2005, addressing the above deficiencies, the Court will grant Defendant's Motion to Dismiss with respect to Plaintiff's Federal False Claims Act claim. If Plaintiff does submit a pleading by November 28, 2005, Defendant's Opposition, due to the Court by December 12, 2005, must address Defendant's standing to move for dismissal of this claim. Plaintiff's Reply to Defendant's Opposition is due to the Court by December 19, 2005.

## IV: CONCLUSION

For the reasons set forth above, Defendant's motion as to:

1. Plaintiff's 42 U.S.C. § 1981 claim for race discrimination is DENIED;

2. Plaintiff's 42 U.S.C. § 1982 claim for employment discrimination based on race is GRANTED;

3. Plaintiff's 42 U.S.C. § 1983 claim for violation of due process under the Fifth Amendment is DENIED WITHOUT PREJUDICE; Defendant's additional briefing is due to the Court by November 28, 2005; Plaintiff's opposition is due to the Court by December 12, 2005; Defendant's reply is due to the Court by December 19, 2005.

4. Plaintiff's 42 U.S.C. § 1985 claim is GRANTED;

5. Plaintiffs Title VII claim is GRANTED;

6. Plaintiffs Federal False Claims Act claim is HELD IN ABEYANCE; Plaintiff's additional briefing is due to the Court by November 28, 2005; Defendant's opposition is due to the Court by December 12, 2005; Plaintiff's reply is due to the Court by December 19, 2005.

Date: October 25, 2005

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge