# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THERESA WESTON SAUNDERS,

    Plaintiff,

     v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 02-1803 (CKK)

## MEMORANDUM OPINION
(May 13, 2010)

Plaintiff Theresa Weston Saunders brings this action against Defendants District of Columbia (the "District" or "D.C."), Natwar M. Gandhi, individually and in his official capacity as Chief Financial Officer of the District of Columbia, and Earl C. Cabbell, individually and in his official capacity as Plaintiff's Supervisor (collectively "Defendants"). Plaintiff, a former employee of the District, alleges that Defendants unlawfully discriminated against her on the basis of her gender and age in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and on the basis of her race in violation of 42 U.S.C. §§ 1981, 1982, 1983, and 1985. She further alleges that Defendants impermissibly retaliated against her in violation of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and that she was terminated from her employment with the District in violation of her Fifth Amendment due process rights.

The District previously filed a [31] Motion to Dismiss Plaintiff's claims, which Motion the Court granted-in-part, denied-in-part and held in abeyance-in-part pending further briefing. In particular, as is relevant to the instant Memorandum Opinion, the Court held the District's Motion in abeyance insofar as it sought dismissal of Plaintiff's FCA retaliation claim and

directed the parties to submit further briefing on that issue. In addition, the Court denied the District's Motion without prejudice as to Plaintiff's claim that her property interest in her job with the District was unlawfully terminated without due process in violation of the Fifth Amendment and ordered the parties to provide supplemental briefing as to the viability of Plaintiff's section 1983 claim as well.

This matter now comes before the Court upon the filing of the parties' supplemental briefing. Accordingly, the only two claims presently at issue are Plaintiff's FCA retaliation claim and her section 1983 claim insofar as it is based on allegations that Defendants terminated her in violation of her Fifth Amendment due process rights. Upon consideration of the parties' filings, the relevant case law and statutory provisions as well as the record of this case as a whole, the Court rules as follows. First, with respect to the District's [31] Motion to Dismiss, which was previously held in abeyance with respect to Plaintiff's FCA retaliation claim, the Court shall DENY the Motion for the reasons below. Specifically, the Motion is DENIED WITH PREJUDICE insofar as the District argues that Plaintiff has failed to sufficiently allege that she was retaliated against in violation of the FCA, but is DENIED WITHOUT PREJUDICE insofar as the District argues that Plaintiff's FCA claim is time-barred. The parties shall submit supplemental briefing on the question of the appropriate statute of limitations for Plaintiff's FCA retaliation claim consistent with this Memorandum Opinion and as provided for in the accompanying Order. Second, the Court shall GRANT the District's [38] Supplemental Motion to Dismiss Plaintiff's due process claim and shall therefore dismiss Plaintiff's claim that she was termination in violation of her Fifth Amendment property interests for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

# I. BACKGROUND

*A.    Factual Background*

As set forth in the Amended Complaint, Plaintiff, an African-American female, was previously employed by the District from August 1982 through her termination in 2000. Amended Complaint ("Am. Compl.") ¶¶ 5, 10, 33.[1] During that time period, Plaintiff "held increasingly responsible positions in [the] financial management of the D.C. Government." *Id.* ¶ 5. In 1999, she became Acting Chief Financial Officer ("CFO") at the Office of the Chief Technology Officer. *Id.* ¶ 12. Plaintiff alleges that at the time of her appointment to the Acting CFO position, the District was "under pressure from the U.S. Department of Treasure and the U.S. Government Accounting Office because financial statements could not be produced for more than $70 million [in federal funding] given to the [Office of the Chief Technology Officer]." *Id.* ¶ 13. According to Plaintiff, the then-City Administrator and Chief Financial Officer turned to Plaintiff for assistance, "insist[ing] that [Plaintiff] take the [Office of Chief Technology Officer] assignment to save the District from reprisals by" the Federal government. *Id.* ¶ 14.

Plaintiff alleges that during her tenure as Acting CFO at the Office of Chief Technology Officer, she "discovered and reported numerous deficiencies in contract procurement, violations in the approval and payment of contractors, and an overall lack of . . . internal control in management of [its federal funding]." *Id.* She also "forwarded a memorandum to [the Chief Technology Officer] recommending a disallowance of $13,812,518 against a claim submitted by

---

[1] These facts are drawn from the well-pleaded factual allegations in Plaintiff's Amended Complaint, which is attached as Exhibit A to Plaintiff's [18] Motion for Leave to Amend.

IBM which was made without appropriate budget authority." *Id.* ¶ 47. While the Chief

Technology Officer acknowledged receipt of the memorandum, no action was taken on the

recommendation. *Id.* In addition, Plaintiff asserts that she "directed letters to [the Office of the

Chief Financial Officer's] General Counsel requesting clarification of authority of consultants

and contractor employees of the District of Columbia to obligate the city to pay for work

contracted in violation of established contractual procedures." *Id.* ¶ 32.

According to Plaintiff, as a result of these "initiatives," she "became the target of reprisals

by [the Chief Technology Officer]." *Id.* ¶¶ 14, 32. Specifically, Plaintiff asserts that she "was

not permitted . . . to report to the Chief Financial Officer of the District of Columbia," despite the

requirement in force at that time that all agency Chief Financial Officers were to report directly to

the Chief Financial Officer. *Id.* ¶¶ 29-30. In addition, she alleges that the Chief Technology

Officer attempted to remove Plaintiff from her position as Acting CFO and to bar her from

working in any other position within the Office of the Chief Financial Officer. *Id.* ¶ 14. Plaintiff

asserts, however, that the Chief Technology Officer's efforts were thwarted by the then-City

Administrator and Chief Financial Officer, who intervened on Plaintiff's behalf and "insisted that

she not be excluded from her career" with the Office of the Chief Financial Officer. *Id.*

Ultimately, in October 1999, Plaintiff was reassigned away from the Office of the Chief

Technology Officer to the position of CFO for the District of Columbia Lottery and Charitable

Games Control Board. *Id*. ¶¶ 10, 14.

At some unspecified date thereafter, the City Administrator and the Chief Financial

Officer left their positions with the D.C. Government. *Id.* ¶ 15. Plaintiff alleges that their

departure left her vulnerable to further retaliation and that she was subsequently "targeted,

reassigned and demoted as reprisal for upholding the District's financial accountability law." *Id.*

Specifically, Plaintiff asserts that, beginning in late May of 2000, the Chief of Staff for the new

Chief Financial Officer approached her about a transfer to the Special Projects Team, which was

headed by Defendant Cabbell. *Id.* ¶¶ 20-21. According to Plaintiff, the Special Projects Team

"was responsible for developing and implementing strategies to resolve outstanding audit

findings and internal control weaknesses stated in the management letter of the audit report." *Id.*

¶ 20. Plaintiff indicated to the Chief of Staff that "she would have to think about serving on the

[Special Projects Team]." *Id.* ¶ 21. On June 19, 2000, the Chief of Staff again contacted

Plaintiff and this time advised her that she would in fact be transferred to the Special Projects

Team. *Id.* Plaintiff responded "that she had decided to turn down the staff position offer because

it was not a good career move to change from a management position to a staff/line position."

*Id.* Plaintiff was told, however, that she "had no choice - it was either take the transfer or have

no job;" as a result, she "unwillingly agreed to the transfer." *Id.*

     Plaintiff alleges that her salary was reduced as a result of the transfer to the Special

Projects Team. *Id.* She further alleges that, upon reporting for work at the Special Projects

Team, her office door was locked, her computer was not connected, and she had no printer;

Plaintiff therefore asserts that "[s]he could not get her work done." *Id.* ¶ 24. In addition,

Plaintiff alleges that "she was increasingly alienated by the Defendants" during her time with the

Special Projects Team. *Id.* ¶ 25. For example, "she was not invited to meetings, she was

subjected to hostile remarks, and she was harassed by [Defendant] Cabbell." *Id.*

     Ultimately, on July 25, 2000, Plaintiff was presented with a separation letter, informing

her "[t]hat it is necessary to discontinue your employment with the Office of the Chief Financial

Officer for the District of Columbia." *Id.* ¶ 26. The separation letter was dated July 21, 2000, and indicated that it was effective 30 days after receipt (i.e., August 24, 2010). *Id.* Plaintiff was immediately placed on 30-days paid administrative leave, at the end of which she would be paid a lump sum separation payment equivalent to eight weeks salary. *Id.* Plaintiff was not given a reason for her termination. *Id.* The separation letter advised Plaintiff that she could appeal the termination within ten days of receipt of the letter, which she did. *Id.* ¶ 27. Plaintiff asserts, however, that "Defendants [] totally ignored her appeal," and she subsequently initiated a charge of discrimination with the Equal Employment Opportunity Commission in January 2001. *Id.* ¶¶ 3, 27.

Plaintiff alleges that the decision to transfer her to the Special Projects Team and the decision to terminate her employment with the Office of the Chief Financial Officer were both made by Defendant Ghandi. *Id.* ¶¶ 16, 17, 27. According to Plaintiff, Ghandi was hired as the Chief Financial Officer shortly before Plaintiff was transferred to the Special Projects Team. *Id.* ¶ 16. She asserts that "[w]ithin the first three months as [Chief Financial Officer], Ghandi terminated all female agency CFO's," with the exception of two who worked directly for former-Mayor Williams. *Id.* ¶ 17. In addition, Plaintiff states that "[a]lmost all of the management meetings held by Ghandi consisted of only males" and that "99% of Ghandi's management appointments for the first year were males." *Id.* Plaintiff further alleges that "Ghandi intentionally re-assigned [Plaintiff] to [co-Defendant] Cabbell, who like Ghandi did not believe in the appointment of females to CFO psotions." *Id.* According to Plaintiff, "[a]t the time of [her] demotion/termination, there were other reassignments of male CFOs, but those did not result in adverse actions, i.e., demotions or terminations," even though "[s]ome of these male

individuals had not performed equally as well in their positions as [Plaintiff] had." *Id.* ¶ 28.

### B.      Procedural History

Plaintiff filed her initial Complaint on September 11, 2002.  *See* Compl., Docket No. [1].

As indicated previously, Plaintiff has named as Defendants the District of Columbia, Natwar M.

Gandhi, individually and in his official capacity as Chief Financial Officer of the District of

Columbia, and Earl C. Cabbell, individually and in his official capacity as Plaintiff's Supervisor.

The District initially moved for dismissal of Plaintiff's Complaint.  *See* District's Mot. to

Dismiss, Docket No. [9].  Plaintiff opposed the District's motion and simultaneously moved for

leave to amend her complaint in an effort to resolve certain issues raised in the District's motion.

*See* Pl.'s Mot. for Leave, Docket No. [18].  The District did not file an opposition to Plaintiff's

motion for leave, instead choosing to substantively respond to the new allegations in Plaintiff's

proposed Amended Complaint.  *See* District's Reply, Docket No. [24].  Rather than rule on

Plaintiff's claims in a piecemeal fashion, the Court granted Plaintiff's request for leave to file an

Amended Complaint, and denied the District's motion to dismiss without prejudice, allowing the

District to re-file a dispositive motion directed towards Plaintiff's Amended Complaint, as it

deemed appropriate.  *See* Mar. 23, 2004 Order, Docket No. [30].

Accordingly, Plaintiff's Amended Complaint is the operative complaint in this matter.[2]

Although the Amended Complaint is by no means a model of clarity, the Court understands

---

[2] As is discussed below, while Plaintiff purported to file a [40] Second Amended
Complaint, Plaintiff failed to move for leave of the Court before doing so.  The Court therefore
shall order that the Second Amended Complaint be stricken from the docket in this case as filed
in violation of the Federal Rules of Civil Procedure.  *See infra* at pp. 14-15.

Plaintiff to assert seven claims, which fall into four principal categories.  First, Plaintiff alleges that Defendants discriminated against her on the basis of her gender and age in violation of Title VII, 42 U.S.C. § 2000e *et seq*.  Second, Plaintiff asserts that Defendants discriminated against her on the basis of her race in violation of 42 U.S.C. §§ 1981, 1982, 1983, and 1985.  Third, Plaintiff contends that Defendants unlawfully retaliated against her in violation of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*.  Fourth, Plaintiff contends that Defendants deprived her of her property and liberty interests without due process in violation of the Fifth Amendment; although not stated in the Amended Complaint itself, Plaintiff appears to assert this latter claim pursuant to 42 U.S.C. § 1983 as well.  *See* Am. Compl. ¶¶ 42-43, 48.[3]

    As permitted, the District[4] filed a renewed [31] Motion to Dismiss (hereinafter, "Motion to Dismiss") directed at Plaintiff's Amended Complaint.  *See* Def.'s MTD, Docket No. [31].  After full briefing by the parties, *see* Pl.'s Opp'n to Def.'s MTD, Docket No. [34]; Def.'s Reply in support of Def.'s MTD, Docket No. [35], the Court issued an Order and Memorandum Opinion granting-in-part, denying-in-part, and holding in abeyance-in-part the Motion to Dismiss.  *Saunders v. D.C.*, Civ. Act. No. 02-1803, 2005 WL 3213984 (D.D.C. Oct. 25, 2005).  Specifically, the Court granted the District's motion with respect to Plaintiff's claims brought

---

    [3]  Although Plaintiff did not number the final paragraph of her Amended Complaint, the Court for convenience shall refer to that paragraph in numerical order as Paragraph 48.

    [4] Neither Defendant Ghandi nor Defendant Cabbell (hereinafter, "Individual Defendants"), in their individual capacities, have joined the District's Motion to Dismiss nor have they yet filed an answer or otherwise responded to Plaintiff's Amended Complaint (or the initial Complaint, for that matter).  As discussed in greater detail below, *see infra* at pp. 13-14, it is unclear from the present record whether Plaintiff has served the Complaint and Summons on Defendant Ghandi and Defendant Cabbell in their individual capacities.

under 42 U.S.C. §§ 1982 and 1985 as well as her claim of discrimination in violation of Title VII, but denied the motion with respect to Plaintiff's 42 U.S.C. § 1981 claim. *See id.* at * 3-4, 6-7. The Court also denied the District's motion as to Plaintiff's claim that her property interest in her job with the District was unlawfully terminated without due process in violation of the Fifth Amendment, but did so without prejudice and ordered the parties to provide supplemental briefing addressing the viability of Plaintiff's section 1983 claim.[5] *Id.* at * 5. Finally, the Court held the District's motion in abeyance insofar as it sought dismissal of Plaintiff's FCA retaliation claim, directing the parties to submit further briefing on that issue as well. *Id.* at * 7-8. Plaintiff therefore has four claims remaining — namely, her claims of (1) racial discrimination in violation of 42 U.S.C. § 1981; (2) racial discrimination in violation of 42 U.S.C. § 1983; (3) retaliation in violation of the FCA; and (4) violation of her Fifth Amendment right to due process.

This matter now comes before the Court upon the filing of the parties' supplemental briefs as required by the Court's order on the District's Motion to Dismiss. The only two claims that are presently at issue are Plaintiff's FCA retaliation claim and her section 1983 claim insofar as it is based upon allegations that Defendants terminated her in violation of her Fifth Amendment due process rights. First, with respect to Plaintiff's claim of retaliation in violation

---

[5] In arguing that Plaintiff's section 1983 should be dismissed, the District focused only on Plaintiff's allegation that her property interest in her job had been terminated without due process; the District did not address Plaintiff's related claims under section 1983 that Defendants violated her liberty interest without due process of the law and discriminated against her based upon race. *See Saunders*, 2005 WL 3213984 at * 6; *see also* Def.'s MTD, Docket No. [31], at 7-8.

of the FCA, the parties have submitted the following supplemental materials: (1) Plaintiff's Supplemental Memorandum of Law on the False Claims Act Retaliation Claim (hereinafter, "Pl.'s FCA Supp. Mem."), Docket No. [41]; and (2) Defendant's Supplemental Brief in Reply to Plaintiff's Supplemental Memorandum of Law on the False Claims Act Retaliation Claim (hereinafter, "Def.'s FCA Supp. Reply Mem."), Docket No. [42].

Second, with respect to Plaintiff's due process claim, the parties have submitted the following supplemental materials: (1) the District's Supplemental Motion to Dismiss Plaintiff's due process claim (hereinafter, "Def.'s DP Supp. MTD."), Docket No. [38]; (2) the District's Amended Supplemental Memorandum on Plaintiff's due process claim (hereinafter, "Def.'s Am. DP Supp. Mem."), Docket No. [39]; (3) Plaintiff's Response to the District's Supplemental Memorandum (hereinafter, "Pl.'s DP Supp. Opp'n"), Docket No. [43]; and (4) the District's Reply (hereinafter, "Def.'s DP Supp. Reply"), Docket No. [47]. In addition, after principal briefing had been completed, Plaintiff filed a motion for leave to file a surreply, *see* Pl.'s Mot. for Leave to File Surreply, Docket No. [48], to which Plaintiff attached the proposed surreply, *see id.*, Ex. A ("Pl.'s DP Supp. Surreply"). The District in turn filed what it nominally entitled an opposition to Plaintiff's motion for leave; however, while purporting to oppose Plaintiff's request for leave, the District's opposition consisted largely of a substantive response to the arguments advanced in Plaintiff's proposed surreply. *See* Def.'s Opp'n to Pl.'s Mot. for Leave to File Surreply, Docket No. [49]. The Court therefore granted Plaintiff's motion for leave, indicating that it would "consider the Surreply filed by Plaintiff and the arguments raised in Defendant's Opposition thereto as it deems appropriate." Sept. 22, 2006 Min. Order. Accordingly, the Court

shall also consider these materials to the extent appropriate.

Finally, along with Plaintiff's supplemental briefing on her FCA claim, Plaintiff submitted a [40] Second Amended Complaint. Plaintiff asserted that she was doing so in order to "set[] forth in greater detail the FCA retaliation claim." Pl's FCA Supp. Mem. at 2. Significantly, Plaintiff did not obtain either the Defendants' written consent or the Court's leave prior to submitting the Second Amended Complaint nor did she file an appropriate motion for leave to amend. Rather, Plaintiff simply submitted the amendment along with her Court-ordered supplemental briefing. Although the Clerk's Office appears to have automatically lodged the Second Amended Complaint on the docket in this case, it did so in error, as is discussed in greater detail below. *See infra* at pp. 14-15. The operative complaint in this case therefore remains Plaintiff's Amended Complaint.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must

construe the complaint in a light most favorable to the plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine*

*Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also*

*Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally

construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be

derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff

must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court,

drawing on its judicial experience and common sense, to infer more than the "mere possibility of

misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

### III. DISCUSSION

A.     *Plaintiff's Claims Against Defendants Ghandi and Cabbell in their Individual
       Capacities*

Plaintiff asserts that she brings this suit against Defendant Ghandi and Defendant Cabbell

in their individual as well as official capacities. The record, however, is unclear as to whether

Plaintiff has actually served the Individual Defendants in their individual capacities. While

Plaintiff submitted proof of service as to Defendant Ghandi, *see* Docket No. [3], no proof of

service has been filed with respect to Defendant Cabbell.  Moreover, the proof of service submitted by Plaintiff with respect to Defendant Ghandi is internally inconsistent as to whether he was served as an employee of the District or in his individual capacity.  For example, although the process server checked off the box on the Return of Service indicating that service was made to Defendant Ghandi in his individual capacity at his "dwelling house or usual place of abode," the Summons by contrast lists the place of service as Defendant Ghandi's "place of employment" with that address provided.  *See* Docket No. [3].  In addition, the process server avers on the Return of Service that the summons and complaint were left with Jerry Malone; reference to the Summons issued as to the District of Columbia indicates that Jerry Malone was the then-General Counsel for the District, *see* Docket No. [4], further suggesting that service was made at the place of employment and not Defendant Ghandi's personal home.  Finally, the Court notes that the process server similarly indicated on the Returns of Service for the District that service was made to the "defendant's dwelling house or usual place of abode." *See* Docket Nos. [2] & [4].  Quite obviously, this representation is incorrect as to the District, thereby raising the possibility that the process server may have simply checked the wrong box on all three affidavits submitted as proof of service in this matter.

Significantly, the Individual Defendants have yet to file an answer or respond to the pleadings in this case, and the District has consistently maintained that, "upon information and belief, the District of Columbia was the only defendant to have been served with Plaintiff's complaint."  Def.'s MTD at 2, n.1.  Plaintiff, however, has not taken any action as to the Individual Defendants nor has she made any effort to respond to the District's assertions on the

point.

The Court directs Plaintiff's attention to Federal Rule of Civil Procedure 4(m), which

provides that:

> If a defendant is not served within 120 days after the complaint is filed, the court —
> on motion or on its own after notice to the plaintiff — must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

As the Complaint was filed in this case on September 11, 2002, Plaintiff was required to serve

the Complaint and Summons on the Individual Defendants by no later than January 9, 2003.

Obviously, the time for Plaintiff to perfect service is now long past. The Court therefore directs

Plaintiff to file a notice with the Court, by no later than **June 1, 2010**, providing either proof of

timely service as to the Individual Defendants or an explanation as to why service was not timely

made. Plaintiff is advised that if she fails to file such notice, the Court shall dismiss Plaintiff's

claims against the Individual Defendants in their individual capacities only for failure to comply

with Rule 4(m).

### B. *Second Amended Complaint*

As indicated above, Plaintiff purported to file a [40] Second Amended Complaint along

with her supplemental briefing on her FCA claim. At the time the filing was made, Federal Rule

of Civil Procedure 15 permitted a party to amend its pleading ***once*** as a matter of course at any

time before a responsive pleading is served.[6] Subsequent amendments to the pleading were

---

[6] Federal Rule of Civil Procedure 15 has since been amended, effective December 1,
2009, to permit a party to amend its pleading once as a matter of course only within 21 days after
the pleading is served or within 21 days after a responsive pleading or motion under Rule 12 is

permitted "only with the opposing party's written consent or the court's leave."  *See* Fed. R. Civ. P. 15(a)(2).  In this case, Plaintiff has previously amended her complaint.[7]  Plaintiff was therefore required to move for leave of the Court or obtain the opposing party's written consent before additional amendments could be made.  This she has not done.  Accordingly, Plaintiff's [40] Second Amended Complaint shall be STRICKEN from the record.

While this result is mandated by the federal rules, the Court nonetheless emphasizes that this decision will not prejudice Plaintiff and has no practical effect on the Court's conclusions reached herein.  As Plaintiff explained in submitting the amendments, her sole purpose in filing a second amended complaint was to "set[] forth in greater detail the FCA retaliation claim" in response to the District's supplemental briefing.  Pl's FCA Supp. Mem. at 2.  For the reasons set forth below, the Court concludes that the District's Motion to Dismiss must be denied at this time to the extent it seeks dismissal of Plaintiff's FCA retaliation claim.  The claim therefore remains viable at present, and Plaintiff is of course free to move for leave to amend in compliance with the Federal Rules.  The Amended Complaint therefore remains the operative

---

served.  Nonetheless, under either version of the Rule, a party may amend the complaint only ***once*** as a matter of course.

[7] The Court notes that Plaintiff, in amending her complaint for the first time, filed a motion for leave of the Court.  *See* Pl.'s Mot. for Leave to Amend, Docket No. [18].  As indicated above, however, Plaintiff was not required to do so, as she was entitled under Rule 15 to amend her complaint once as a matter of course prior to service of a responsive pleading.  In such a situation, the D.C. Circuit has made clear that the Court is to effectively treat Plaintiff's motion for leave as an amendment of right.  *See Cureton v. U.S. Marshall Serv.*, 322 F. Supp. 2d 23, 25, n. 5 (D.C. Cir. 2004) (stating that a plaintiff's "filing of a motion for leave to amend does not nullify her right to amend and invoke the court's authority to deny leave.").  Accordingly, the Court is persuaded that any additional amendments to Plaintiff's complaint may be made only with leave of the Court or with the opposing party's consent pursuant to Rule 15.

pleading in this case.  With that understanding in mind, the Court turns now to consider the merits of the parties' supplemental briefing on Plaintiff's FCA and due process claims.

### C.  *Plaintiff's False Claims Act Retaliation Claim*

The Court first considers Plaintiff's allegation that Defendants unlawfully retaliated against her in violation of the Federal False Claims Act.  The FCA imposes civil liability upon any person who, *inter alia*, knowingly presents a "false or fraudulent claim for payment" to the United States.  31 U.S.C. § 3729.[8]  An FCA civil action may be commenced in two ways.  First, the Attorney General may bring a civil action against an alleged false claimant.  31 U.S.C. § 3730(a).  Second, private individuals — commonly known as "relators" — may bring a *qui tam* action in the Government's name to remedy violations of § 3729.  *See* 31 U.S.C. § 3730(b).  In addition, as is relevant to Plaintiff's suit, the FCA confers a private cause of action on an individual who has been retaliated against by her employer for assisting in an FCA investigation or proceeding.  31 U.S.C. § 3730(h).  Specifically, section 3730(h) provides that:

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment

---

[8] The FCA has been amended at least twice since the filing of Plaintiff's Complaint.  *See, e.g.,* Patient Protection and Affordable Care Act, H.R. 3590, 111th Cong. § 10104 (2010) (amending 31 U.S.C. § 3730); Fraud Enforcement Recovery Act of 2009, S. 386, 111th Cong. § 4 (2009) (amending 31 U.S.C. §§ 3729, 3730).  Despite being ordered by the Court to provide updates as to any intervening changes in the facts or law, *see* Mar. 13, 2010 Order, Docket No. [56], neither party has acknowledged these changes or addressed whether they have any impact on Plaintiff's FCA retaliation claim.  Nonetheless, given the Court's conclusions herein, the Court finds that the parties' failure to address the FCA amendments is not material to resolution of the parties' supplemental briefing.  The Court therefore cites to and quotes from the version of the FCA in effect at the time the action was commenced.  The parties are advised, however, that any future briefing on Plaintiff's FCA claim must address the FCA amendments and the impact of such changes on Plaintiff's FCA claim, if any.

by his or her employer because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

As indicated above, the Court held the District's Motion to Dismiss in abeyance insofar as the District sought dismissal of Plaintiff's claim of retaliation brought under the FCA. The District had initially argued in its Motion to Dismiss that Plaintiff's FCA claim should be dismissed for two principal reasons: (1) Plaintiff had failed to allege that "she disclosed any information relating to any false claims action, including the investigation of, initiation of, testimony or assistance in, an action that was or had been intended to be filed pursuant to federal law," Def.'s MTD at 10-11; and (2) Plaintiff's claim was filed beyond the relevant statute of limitations period and was therefore untimely, *id.* at 11. Plaintiff disagreed, arguing that she had sufficiently alleged that she was retaliated against for engaging in lawful acts done in furtherance of an FCA action filed, or to be filed, and that the District had relied on an incorrect statute of limitations in asserting that her claim was untimely. *See* Pl.'s Opp'n to Def.'s MTD at 18-19. The Court ultimately determined that it could not resolve the viability of Plaintiff's FCA claim on the record then before it because the parties had failed to adequately brief the relevant legal issues. *See Saunders*, 2005 WL 3213984, * 8. The Court therefore required the parties to submit supplemental briefing addressing, *inter alia*: (1) the appropriate statute of limitations to be applied to Plaintiff's retaliation claim under the FCA, and (2) the sufficiency of Plaintiff's retaliation claim.[9] *Id.* As the parties have since submitted the required briefing, the Court now

---

[9] The Court also directed the District to brief the issue of standing as to the FCA claim, *Saunders*, 2005 WL 3213984, * 8, which the District has now done, *see* Def.'s FCA Reply Mem.

turns to consider these two issues.

### 1.    Statute of Limitations

The FCA provides for a six-year statute of limitations for civil actions brought pursuant to 31 U.S.C. § 3730.  *See* 31 U.S.C. § 3731(b)(1).  However, in *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409 (2005), the United States Supreme Court held that the express statute of limitations applies only to §§ 3730(a) and (b) actions and does not govern § 3730(h) retaliation actions.  *Id*. at 417.  Rather, the Supreme Court held that the most closely analogous state limitations period governs FCA retaliation claims.  *Id* at 418.  The task now before the Court, therefore, is to determine which District statute provides the most closely analogous statute of limitations.[10]

Significantly, this issue appears to be one of first impression in the D.C. Circuit.  The parties have not directed the Court to any case law within this Circuit addressing this issue nor is the Court itself aware of any such legal precedent.  Although a handful of courts outside of this jurisdiction have addressed this question, they have reached varying conclusions as to the type of state statute that is most closely analogous to the FCA's retaliation provisions.  *Compare Campion v. Northeast Utilities*, 598 F. Supp. 2d 638, 645-53 (M.D. Penn. 2009) (applying residual statute of limitations for personal injury actions), *United States ex. rel. Smart v. Christus Health*, 626 F. Supp. 2d 647, 657-58 (S.D. Tex. 2009) (applying statute of limitations period for

---

at 4-5.  Plaintiff has not contested this issue, *see generally* Pl.'s FCA Supp. Mem., and the Court is satisfied that any challenges to the District's standing are without merit.

[10] District of Columbia law may be treated as state law for purposes of the borrowing doctrine.  *See Brown v. United States*, 742 F.2d 1498, 1501 (D.C. Cir. 1984).

claims alleging retaliation against hospital employees for reporting violations of law), *United States ex. rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 99-102 (D. Conn. 2006) (applying statute of limitations period for wrongful discharge tort claims), *with United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1035 (9th Cir. 1998) (holding that "the most analogous statute of limitations under California law is the one-year statute applicable to wrongful termination in violation of California public policy"). As these cases demonstrate, the question of which limitations period to apply to Plaintiff's FCA retaliation claim is by no means a simple, straightforward one.

Unfortunately, the parties' briefing on this issue is woefully inadequate, leaving the Court once again unable to adequately resolve the question on the current record. The parties themselves disagree on this issue, with each advocating for the application of a different statute of limitations period to Plaintiff's claim under 31 U.S.C. § 3730(h). Plaintiff urges the Court to apply the catchall three-year statute of limitations period set forth at D.C. Code § 12-301(8) (providing that actions "for which a limitation is not otherwise specially prescribed" may not be brought after "3 years").[11] Pl.'s FCA Supp. Mem. at 5-6. Under this theory, Plaintiff's FCA retaliation claim is timely. The District, by contrast, argues that D.C.'s Whistleblower Protection Act ("WPA"), D.C. Code § 1-615.51 *et seq.*, is the most closely analogous state statute and that the Court should therefore apply the WPA's limitations period to Plaintiff's claim, which the District asserts is one year. Def.'s Supp. Reply Mem. at 3-4. Under this theory, Plaintiff's FCA

---

[11] Plaintiff, in her Supplemental Memorandum, actually cites to D.C. Code § 1-301(8). As no such code provision exists, the Court assumes that Plaintiff intended to cite to D.C. Code § 12-301(8), which is the correct citation for the District's catchall statute of limitations provision.

retaliation claim would be time-barred. Accordingly, resolution of this issue may have a dispositive impact on the viability of Plaintiff's FCA claim.

Despite the importance of this question, the parties have provided scant attention to the issue. Plaintiff's argument in favor of the three-year catchall statute of limitations is located in a single paragraph in her supplemental memorandum and is premised entirely upon the incorrect assertion that the Supreme Court's decision in *Graham County* identified D.C. Code § 12-301(8) "as the applicable statute of limitations for a retaliation claim in the District of Columbia." *See* Pl.'s FCA Supp. Mem. at 5-6. While the Supreme Court identified a series of "likely analogous state statutes of limitations" in its decision in *Graham County*, it explicitly "stress[ed]" that these statutes "are only the likely candidates for analogous state statues of limitations; it may well not be an exhaustive or authoritative list of possibilities." 545 U.S. at 419, n. 3; *see also id.* at 422 (emphasizing that it was not deciding the question of which "appropriate state statute of limitations to borrow"). For this reason, "[c]ourts have not felt constrained by the list of suggested analogous limitations periods" set forth in *Graham County*. *Campion*, 598 F. Supp. 2d at 646 (listing cases). Accordingly, while Plaintiff is correct that the Supreme Court identified the catchall statute of limitations as a "likely candidate," the Supreme Court did ***not*** authoritatively hold that application of this limitations period was appropriate. Indeed, as Plaintiff conveniently fails to acknowledge, the Supreme Court in fact identified two District statutes in its list of likely analogous statutes — listing both the catchall provision identified by Plaintiff and the statute of limitations for the District's WPA (i.e., the statute identified by the District as most closely analogous). *Graham County*, 545 U.S. at 491, n. 3. The Supreme

Court's citation of D.C. Code § 12-301(8) as one of **two** possible statutory candidates simply cannot bear the weight Plaintiff seeks to place on it. Significantly, Plaintiff offers no other argument in support of her position that the Court should apply the three-year catchall statute of limitations period.

While the District has, unlike Plaintiff, at least attempted to advance a substantive argument in support of its position that the Court should apply the District's WPA limitations period to Plaintiff's FCA claim, the District's argument is similarly deficient for several reasons. First, while the District argues that the WPA is the most analogous statute, this argument is based solely on the assertion — set forth in a single sentence in the District's supplemental briefing — that "[t]he D.C. Circuit has likened the False Claims Act anti-retaliation provision to a whistleblower casue of action." Def.'s FCA Supp. Reply Mem. at 3 (citing *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005)). This general assertion, however, is an inadequate substitute for the type of detailed substantive analysis that is necessary to demonstrate that D.C. Code § 1-615.54 is, in fact, the most closely analogous statute of limitations. *See, e.g., Campion*, 598 F. Supp. 2d at 645- 53; *United States ex. rel. Smith*, 415 F. Supp. 2d at 99-102.

Second, despite being ordered by the Court to provide updates as to any intervening changes in the facts or law, *see* Mar. 13, 2010 Order, Docket No. [56], the District failed to acknowledge that the statute of limitations provision for the WPA has been recently amended. At the time the parties' supplemental briefing was filed, the Act provided that "[a] civil action shall be filed within one year after a violation occurs or within one year after the employee first becomes aware of the violation." D.C. Code § 1-615.54(a). On January 11, 2010, however, the

21

D.C. Council approved D.C. Act 18-265, known as the Whistleblower Protection Act Amendment of 2009, which amended D.C. Code § 1-615.54 to specify that "[a] civil action shall be filed within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." The Amendment became effective on March 11, 2010. While it appears likely that this amendment does not materially impact the District's argument or the applicable statute of limitations period that would apply to Plaintiff's FCA claim, the parties have not briefed this question and the Court declines to make the parties' arguments for them.

Third, while the District urges the Court to adopt the WPA's statute of limitations period, the District's own briefing suggests a third likely candidate statute — the District's statute of limitations period for claims of wrongful discharge in violation of public policy. *See* Def.'s FCA Supp. Reply at 3 (citing to *United States ex rel. Lujan v. Huges Aircraft Co.*, 162 F.3d 1027 (9th Cir. 1998) (applying California's one-year limitation statute of limitations period for discharge in violation of public policy)); *see also United States ex rel. Smith*, 415 F. Supp. 2d at 99-102 (D. Conn. 2006) (concluding that the state's statute of limitations period for wrongful discharge in contravention of public policy, rather than state's whistleblower protection limitations period, applied to FCA retaliation claim). Under District of Columbia case law, it appears the limitations period for claims of wrongful discharge in violation of public policy is three years. *See Kamen v. Int'l Bro. of Elec. Workers*, *AFL-CIO*, 505 F. Supp. 2d 66, 78 (2007). Plaintiff's FCA claim would therefore be timely if the Court were to determine that the District's wrongful discharge statute of limitations period was the most closely analogous to the FCA's retaliation

provision. Neither party, however, has addressed this particular statutory provision.

Given the inadequacy of the parties' briefing and the importance of this issue, the Court declines to make a ruling on the present record. In so doing, the Court emphasizes that it makes no conclusion as to the merits of the parties' respective arguments nor does it suggest that the statute of limitations period for claims of wrongful discharge in violation of public policy is the most analogous statute. Rather, the Court highlights these points simply to illustrate some of the key deficiencies in the parties' briefing on the statute of limitations issue. Accordingly, the Court shall DENY WITHOUT PREJUDICE the District's [31] Motion to Dismiss insofar as the District urges that Plaintiff's claim is time-barred. However, because resolution of this issue may be dispositive of Plaintiff's FCA claim and may also implicate the Court's jurisdiction,[12] the parties are directed to file supplemental briefing on the question of the appropriate statute of limitations for Plaintiff's FCA retaliation claim consistent with this Memorandum Opinion and as provided for in the accompanying Order.

### 2. Sufficiency of Plaintiff's FCA Retaliation Claim

In its Motion to Dismiss, the District had also argued in the alternative that Plaintiff has failed to state a viable claim for retaliation in violation of the FCA. Specifically, the District urged that Plaintiff had failed to allege that "she disclosed any information relating to any false

---

[12] *See, e.g., U.S. ex rel. Dugan v. ADT Sec. Servs., Inc.*, Civ. Act. No. 03-3485, 2009 WL 3232080, * 3 (D. Md. Sept. 29, 2009) ("It is not yet clearly resolved whether a statute of limitations defense under the FCA is properly analyzed as a bar to subject matter jurisdiction or as a failure to state a claim.") (citing cases). The parties must therefore also address in their supplemental briefing whether application of the statute of limitations raises a challenge to the Court's jurisdiction.

claims action, including the investigation of, initiation of, testimony or assistance in, an action

that was or had been intended to be filed pursuant to federal law." Def.'s MTD at 10-11. As

explained above, the Court held Defendant's Motion to Dismiss in abeyance on this point and

ordered supplemental briefing addressing the identified deficiencies in Plaintiff's FCA claim.

*Saunders*, 2005 WL 3213984, at * 7-8. In particular, the Court directed Plaintiff to: (1) address

her compliance with "the procedures set forth in 31 U.S.C. § 3730(b) and (c) for filing an action

under the Federal False Claims Act;" and (2) show "that she was 'discharged, demoted,

suspended, threatened, harassed, or in any other matter discriminated against' by her employer

because of her lawful actions 'including investigation for, initiation of, testimony for, or

assistance in an action filed or to be filed under this section,'" as required by 31 U.S.C. §

3730(h). *Id.* at * 8.

Plaintiff has now submitted the required supplemental briefing. *See* Pl.'s FCA Supp.

Mem. First, as Plaintiff correctly notes therein, she need not allege that she initiated a *qui tam*

lawsuit under 31 U.S.C. § 3730(b), or even allege that she contemplated doing so, in order to

state a viable retaliation claim under the FCA. *See id.* at 3, n. 1; *see also Yesudian v. Howard

Univ.*, 153 F.3d 731, 739-41 (D.C. Cir. 1998). Rather, "it is sufficient that a plaintiff be

investigating matters that 'reasonably could lead' to a viable False Claims Act case," *Yesudian*,

153 F.3d at 740, even if the "investigation is conducted without contemplation of — or

knowledge of the legal possibility of — a False Claims Act suit," *id.* at 741. The District does

not dispute this assertion in its supplemental reply.[13]  *See generally* Def.'s FCA Supp. Reply at 2-3.  Accordingly, as Plaintiff accurately states, compliance with the procedures set forth in 31 U.S.C. §§ 3730(b) and (c) is not required to assert a viable claim of retaliation under the FCA. Plaintiff therefore need not show that she satisfied any of the procedural requirements set forth therein.

Second, Plaintiff argues that she has adequately alleged a claim for retaliation in violation of 31 U.S.C. § 3730(h).  *See* Pl.'s FCA Supp. Mem. at 2-5.  While acknowledging Plaintiff's argument on this point, *see* Def.'s FCA Supp. Reply at 3 (noting that Plaintiff "argu[es] that [she] states a substantive claim under the False Claims Act"), the District has chosen not to substantively respond to Plaintiff's assertions, *see generally id*.  Accordingly, given the District's failure to dispute Plaintiff's substantive arguments regarding the viability of her FCA claim, the Court easily concludes that the District has not shown that Plaintiff's FCA retaliation claim must be dismissed at this time for failure to state a claim.  The District's [31] Motion to Dismiss is therefore DENIED insofar as the District argues that Plaintiff failed to allege that "she disclosed

---

[13] Defendant instead argues only that Plaintiff's FCA claim should be dismissed because Plaintiff failed to address the procedural deficiencies identified by the Court in its previous Memorandum Opinion and Order.  *See* Def.'s FCA Supp. Reply at 3.  This argument, however, is without merit as Plaintiff did in fact address her compliance with the procedural requirements of the FCA.  That is, by arguing that she is not required to have initiated a *qui tam* lawsuit under 31 U.S.C. § 3730(b) in order to state a viable retaliation claim under the FCA, Plaintiff argues — correctly — that she need not comply with the procedures set forth in 31 U.S.C. §§ 3730(b) & (c).  *See* Pl.'s FCA Supp. Mem. at 3, n. 1.  Plaintiff has therefore complied with the Court's Order directing her to address her compliance with the FCA's procedures.  To the extent the District construes the Court's previous Memorandum Opinion as requiring Plaintiff actually show that she filed a *qui tam* lawsuit, it is clear that Plaintiff need not do so in light of the D.C. Circuit precedent.

any information relating to any false claims action, including the investigation of, initiation of, testimony or assistance in, an action that was or had been intended to be filed pursuant to federal law."

      D.     *Plaintiff's Due Process Claim*

The Court turns finally to consider Plaintiff's claim that her dismissal deprived her of her property interest in continued employment without due process in violation of the Fifth Amendment.[14]  The District initially argued in its Motion to Dismiss that Plaintiff's due process claim must be dismissed for failure to state a claim insofar as the claim is premised on an alleged property interest in Plaintiff's employment with the District because Plaintiff was an at will employee at the time of her termination.  *See* Def.'s MTD at 8.  As the D.C. Circuit has made clear, "[t]hose who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely."  *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).  Accordingly, if Plaintiff was an at will employee at the time of her termination, she cannot succeed on her claim that her dismissal deprived her of her property interest in continued employment without due process in violation of the Fifth Amendment.

In support of its argument that Plaintiff was an at will employee, the District initially relied upon the decisions in *District Council 20 v. D.C.*, Civ. Act. No. 97-185, 1997 WL 446254 (D.D.C. July 29, 1997); *Alexis v. D.C.*, 44 F. Supp. 2d 331 (D.D.C. 1999); and *Leonard v. D.C.*, 794 A.2d 618 (D.C. 2002).  In each of these decisions, the plaintiffs — former District

---

[14] While due process violations are typically analyzed under the Fourteenth Amendment, the District of Columbia — which is not a state — is subject to the Due Process Clause of the Fifth Amendment. *See Butera v. District of Columbia*, 235 F.3d 637, 645 n. 7 (D.C. Cir.1987).

employees — were held to be at will employees by virtue of the Omnibus Consolidated Rescissions and Appropriations Act of 1996 (hereinafter, "OCRA"). As Judge Emmet G. Sullivan aptly explained in his opinion in *District Council 20*,

> The [OCRA] is one of a series of statutes commencing with the District of Columbia Financial Responsibility and Management Assistance Act of 1995 ("1995 Act") that was enacted on April 17, 1995, to eliminate budget deficits and management inefficiencies in the District of Columbia government. The 1995 Act established, *inter alia*, the District of Columbia Financial Responsibility and Management Assistance Authority, and the Office of the Chief Financial Officer. Congress placed the Office of the Chief Financial Officer within the executive branch of the district government, and transferred some of the Mayor's power over financial management to the CFO. One year later, on April 26, 1996, Congress enacted [OCRA]. Section 152(a)[15] of this Act expanded the CFO's authority by transferring all budget,

---

[15] Section 152(a) of OCRA provides, in relevant part, that:

Notwithstanding any other provision of law, for the fiscal years ending September 30, 1996 and September 30, 1997–

(a) the heads and all personnel of the following offices, together with all other District of Columbia executive branch accounting, budget, and financial management personnel, shall be appointed by, shall serve at the pleasure of, and shall act under the direction and control of the Chief Financial Officer:

> The Office of the Treasurer.
>
> The Controller of the District of Columbia.
>
> The Office of the Budget.
>
> The Office of Financial Information Services.
>
> The Department of Finance and Revenue.

The District of Columbia Financial Responsibility and Management Assistance Authority established pursuant to Public Law 104-8, approved April 17, 1995, may remove such individuals from office for cause, after consultation with the Mayor and the Chief Financial Officer.

accounting and financial management personnel in the executive branch of the city government from the Mayor's authority to the CFO's authority, and stating that the employees "serve at the pleasure of" the CFO.

1997 WL 446254, * 3 (internal citations omitted). Based on the plain language of OCRA and its legislative history, these courts uniformly "conclude[d] that section 152 of [OCRA] converted the subject employees to 'at will' employees," and that the subject employees therefore lacked a property interest in their employment with the District. *Id.* at * 5; *see also Alexis*, 44 F. Supp. 2d at 343-44 (same); *Leonard*, 794 A.2d at 624-27 (same).

The District, however, failed to acknowledge in its initial Motion to Dismiss that OCRA, by its own express terms, applied only "for the fiscal years ending September 30, 1996 and September 30, 1997." *Saunders*, 2205 WL 3213984, * 5 (quoting Pub. L. No. 104-134, 110 Stat. 132). Because Plaintiff was terminated in the summer of 2000, the 1996 Budget Act did ***not*** control Plaintiff's employment status at the time of the alleged due process violation. *See id.* The Court therefore concluded that the District had failed to show that Plaintiff was an at will employee at the time of her termination in 2000. Accordingly, the Court therefore denied the District's Motion to Dismiss without prejudice insofar as it moved for dismissal of Plaintiff's due process claim, but granted the District leave to refile a supplemental motion on this point. *See id.*

The District has since filed its Supplemental Memorandum on Plaintiff's due process claim. *See* Def.'s DP Supp. MTD. As set forth therein, the District contends that while OCRA applied only during fiscal years 1995 and 1996, Congress has extended the substantive provisions

_____

OCRA, Pub. L. No. 104-134, § 152, 110 Stat. 1321, 1321-102 (1996).

of section 152(a) by enactment of the District of Columbia Appropriations Act of 1997

(hereinafter, "the 1997 Appropriations Act"). Pub. L. No. 104-194, 110 Stat. 2356. Specifically,

section 142 of the 1997 Appropriations Act provided, in language nearly identical to that in

section 152(a) of OCRA, that:

> Notwithstanding any other provision of law, during any control period in effect under subtitle A of title II of the District of Columbia Financial Responsibility and Management Assistance Act of 1995 the following shall apply:
>
> (a) The heads and all personnel of the following offices, together with all other District of Columbia accounting, budget, and financial management personnel (including personnel of independent agencies but not including personnel of the legislative and judicial branches of the District government), shall be appointed by, shall serve at the pleasure of, and shall act under the direction and control of the
>
> > Chief Financial Officer:
> >
> > The Office of the Treasurer.
> >
> > The Controller of the District of Columbia.
> >
> > The Office of the Budget.
> >
> > The Office of Financial Information Services.
> >
> > The Department of Finance and Revenue.
>
> The District of Columbia Financial Responsibility and Management Assistance Authority established pursuant to Public Law 104-8, approved April 17, 1995, may remove such individuals from office for cause, after consultation with the Mayor and the Chief Financial Officer.

1997 Appropriations Act, Pub. L. No. 104-194, § 142, 110 Stat. 2356, 2375.

Plaintiff does not dispute that the 1997 Appropriations Act extended the substantive

provisions of OCRA. *See* Pl.'s DP Supp. Surreply at 2. She correctly emphasizes, however, that

the provisions were "extended only during any control period in effect under subtitle A of title II

of the District of Columbia Financial Responsibility Management Assistance Act of 1995 (hereinafter, the "Assistance Act of 1995").  *See id.*; *see also* 1997 Appropriations Act, Pub. L. No. 104-194, § 142, 110 Stat. 2356, 2375 ("Notwithstanding any other provision of law, during any control period in effect under subtitle A of title II of the District of Columbia Financial Responsibility and Management Assistance Act of 1995 the following shall apply.").  Accordingly, in order to determine if the provisions of section 142(a) of the 1997 Appropriations Act applied to Plaintiff at the time of her termination — such that she was an at will employee without a property interest in her employment — the first step is to ascertain whether Plaintiff's termination fell within a "control period," as that term is used in section 142(a).

There is some dispute between the parties on this point.  Although the parties both agree that a control period started on April 17, 1995,[16] they disagree as to whether the control period ended before or after Plaintiff was released from her employment with the District.  Section 209(b) of the Assistance Act of 1995 governs the termination date of the control period and provides, in relevant part, that:

> A control period terminates upon the certification by the [District of Columbia Financial Responsibility and Management] Authority that --
>
> (A) the District government has adequate access to both short-term and long-term credit markets at reasonable interest rates to meet its borrowing needs; and
>
> (B) for 4 consecutive fiscal years (occurring after the date of the enactment of this Act) the expenditures made by the District government during each of the years did

---

[16] As the District asserts — and Plaintiff does not dispute — the relevant "control period" began immediately upon enactment of the Assistance Act of 1995, which occurred on April 17, 1995.  Assistance Act of 1995, Pub. L. 104-8, § 209(c), 109 Stat. 97, 137 ("a control period is deemed to exist upon the enactment of this Act").

> not exceed the revenues of the District government during such years (as determined in accordance with generally accepted accounting principles, as contained in the comprehensive annual financial report for the District of Columbia under section 448(a)(4) of the District of Columbia Self-Government and Governmental Reorganization Act).

Assistance Act of 1995, Pub. L. 104-8, § 209(b), 109 Stat. 97, 136-37. By resolution dated September 20, 2000, the District of Columbia Financial Responsibility and Management Authority (hereinafter, the "Authority"), noted that, while the District government had satisfied the first of these requirements (i.e., had adequate access to both short-term and long-term credit markets at reasonable interest rates), the Authority was unable to certify at that time that the second condition, as set forth under paragraph B, had been met. *See* Def.'s DP Am. Mem., Ex. 1 (Authority's September 20, 2000 Resolution).[17] Thereafter, by resolution dated February 14, 2001, the Authority noted that it was "now in a position to make the last required certification under Public Law 104-8," and certified that all requirements had been met. *See id.*, Ex. 2 (Authority's February 14, 2001 Resolution). Accordingly, as the District correctly concludes, the control period ended on February 14, 2001, "upon the certification by the Authority" that the requirements set forth in section 209(b) of the Assistance Act of 1995 had been met. The Court therefore finds that the control period was in effect at the time of Plaintiff's termination, such that the terms of section 142 of the 1997 Appropriations Act applied.

Significantly, Plaintiff, in her opposition to the District's supplemental motion, initially

---

[17] In considering a motion for failure to state a claim under Rule 12(b)(6), it is well established that the Court may consider matters of which the court may take judicial notice as well as matters of public record without converting the motion into one for summary judgment. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Texas Border Coalition v. Napolitano,* 614 F. Supp. 2d 54, 57 n. 1 (D.D.C. 2009).

failed to contest the District's assertion that a control period was in effect at the time of her termination. *See generally* Pl.'s DP Supp. Opp'n. Indeed, her opposition briefing was entirely silent on this point. *See id.*; *see also* Def.'s DP Supp. Reply at 2 (noting Plaintiff's failure to contest the issue). As such, the Court is within its discretion to treat the argument as conceded. *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp .2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 Fed. Appx. 8 (D.C. Cir. 2004); *Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009) (treating defendant's argument in motion for summary judgment as conceded where plaintiff failed to address it in his response). Although Plaintiff has attempted to belatedly address the issue in her Surreply, her efforts to do so are inappropriate as a "surreply may be filed only . . . to address new matters raised in a reply to which a party would otherwise be unable to respond." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002). As such, while the Court indicated that it would "consider the Surreply filed by Plaintiff . . . as it deems appropriate," it is clear that Plaintiff's attempt to use the Surreply as a vehicle to advance untimely arguments is wholly inappropriate and therefore need not be considered by the Court.

Nonetheless, even if the Court were to consider Plaintiff's untimely arguments, her assertions on this point are without merit. Specifically, Plaintiff contends that the control period actually ended — not on the date of the Authority's certification — but on the day the substantive requirements set forth in the Assistance Act of 1995 were actually met in full, i.e., September 30,

2000.  Pl.'s DP Supp. Surreply at 2-3.  Recognizing, however, that this theory only takes her so far — given that Plaintiff's termination was effective on August 24, 2000, well before September 30, 2000 — Plaintiff also urges the Court to find that she was not in fact "terminated" until October 21, 2000.  *Id.*  Plaintiff reasons that because she received a lump sum separation payment, which was the "equivalent to an 8-weeks salary," she was not actually "terminated" until eight weeks after the date her termination became effective.  *Id.*

This argument is plainly without merit for several reasons.  First, the plain language of the Assistance Act of 1995 provides that the "control period terminates upon the ***certification*** by the Authority that" the two enumerated conditions have been met.  Assistance Act of 1995, Pub. L. 104-8, § 209(b), 109 Stat. 97, 136-37 (emphasis added).  Second, even assuming Plaintiff was correct that the control period ended on September 30, 2000 — an argument the Court explicitly rejects — Plaintiff nonetheless was terminated well before that date.  As explained above, Plaintiff alleges that she was given notice of her termination on July 25, 2000, and that the separation letter indicated that her termination was effective 30 days after receipt of the separation letter (i.e., August 24, 2000).  Am. Compl. ¶¶ 26, 33.  Plaintiff's present contention that the District, by awarding Plaintiff a lump-sum payment upon separation, somehow effectively retained Plaintiff in the District's employ for another eight weeks is entirely specious.  Plaintiff offers no legal support for this view, and the Court is unpersuaded.  Rather, based upon Plaintiff's own allegations in the Amended Complaint, it is clear that her termination was effective on August 24, 2000.  As such, at the time of Plaintiff's termination, section 142 of the 1997 Appropriations Act was in force.

Having established as much, the Court must next determine whether Plaintiff qualified as an employee subject to the provisions of section 142, such that she was an at will employee at the time of her termination. The District maintains that Plaintiff qualified as "financial management personnel," as enumerated in section 142(a), at the time of her termination. Def.'s DP Supp. MTD at 4-5. Plaintiff disputes this conclusion for three reasons. The Court addresses each in turn. First, Plaintiff argues that section 142(a), by its own terms, applies only to "management" employees; because Plaintiff alleges that she was holding a staff position at the time of her termination, having been previously demoted from her position as CFO of the District's Lottery and Charitable Games Control Board to the Special Projects Team, she concludes that she was not subject to the terms of section 142 of the 1997 Appropriations Act. Pl.'s DP Supp. Opp'n at 2-3.[18] Significantly, however, Plaintiff has offered no case law or other legal authority in support of her position that section 142 applies only to management employees. Her argument instead rests entirely on the language of the statute itself, and, in particular, the phrase "all other District of Columbia accounting, budget, and financial management personnel." *See id.* Although Plaintiff has not clearly articulated her argument on this point, it appears that she believes that the

_____

[18] While the District disputes Plaintiff's assertion that she was holding a staff position, rather than a management position, at the time of her termination, the Court finds that Plaintiff has sufficiently alleged that she held a staff position at the time of her separation from the District. *See, e.g.*, Am. Compl. ¶ 21 (describing the position on the Special Projects Team as a "staff position"); *id.* Ex. A (EEOC Charge of Discrimination) (indicating that she "was not given supervisory authority" in her position with the Special Projects Team). Admittedly, Plaintiff's Amended Complaint is contradictory on this point. *See, e.g., id.* ¶ 5 ("at the time of her termination, she was employed as Chief Financial Officer of the D.C. Lottery and Charitable Games Control Board."). However, construing the allegations and facts in the Amended Complaint in the light most favor to Plaintiff, the Court shall proceed on the understanding that Plaintiff held a staff position in July of 2000.

word "management" should be read as modifying the word "personnel," such that the phrase refers only to accounting, budget, and financial personnel who are in management. *See* Pl.'s DP Supp. Opp'n at 2.

The Court does not agree and instead concludes that the word "management" should be read as part of the term "financial management," such that Congress intended the phrase at issue to refer to all District personnel (both staff and management) that work in the areas of (a) accounting, (b) budget, and (c) financial management. This is so for several reasons. The word "personnel" is ordinarily defined as "[t]he body of people employed in an organization . . . staff, employees collectively." XI Oxford English Dictionary 605 (2d ed. 1989). The term therefore incorporates both staff as well as managing employees. As such, Plaintiff's assertion that the term "management" should be read to modify "personnel" makes little sense and would require the Court to treat the term "personnel" as superfluous and without meaning. Plaintiff's "reading is thus at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" *Corley v. United States*, __ U.S. __, 129 S. Ct. 1558, 1566 (2009). Moreover, review of the relevant portions of the 1996 Budget Act — upon which section 142 of the 1997 Appropriations Act is based — demonstrates that Congress intended the phrase "financial management" to be read as a single term referencing a particular subject matter or area. *See, e.g.,* OCRA, Pub. L. 104-134, 110 Stat. 1321, 1321-78 (appropriating monies for "a new financial management system"as well as for an analysis of the "existing financial management environment;" referring to "the District's financial management system"); *cf.*

*Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.").[19]  Finally, this interpretation is confirmed by the prior court decisions interpreting the identical language in the predecessor section 152(a) of OCRA. *See, e.g., District Council 20*, 1997 WL 446254, * 1 (finding that the summary dismissal of approximately 165 "financial management employees," without distinction between management and staff employees, did not violate their due process rights as the employees had been converted to at will employees under OCRA).  Plaintiff offers no reason why the Court should now hold otherwise.

Second, Plaintiff suggests for the first time in her Surreply that she may not have been working on "accounting or budget functions" in her position with the Special Projects Team, such that she does not qualify as "accounting, budget, and financial management personnel." Pl.'s DP Surreply at 4.  Alternatively, Plaintiff contends that additional discovery on this issue is needed.  *Id.*  As an initial matter, Plaintiff has been aware from the outset that section 142 of the 1997 Appropriations Act applies specifically to "accounting, budget, and financial management" personnel.  Accordingly, Plaintiff's present assertion on this point could have been — and should have been — raised in her principal briefing; her attempt to advance this argument for the first

---

[19] Indeed, although by no means dispositive, the Court notes that Plaintiff's Amended Complaint itself reflects this same understanding that the term "financial management" refers to a particular subject matter or area.  *See, e.g.,* Am. Compl. ¶¶ 11, 16 (indicating that Plaintiff "had twenty-five years experience in financial management," of which she "served as financial manager, controller or CFO with increasing responsibilities for more than twelve years at the time of her termination").

time in her Surreply is therefore inappropriate and need not be considered by the Court.  *See*

*United States ex rel. Pogue*, 238 F. Supp. 2d at 276-77.

Nonetheless, even if the Court were to consider this argument, it would not alter the

Court's conclusion that Plaintiff was, at the time of her termination, subject to section 142 of the

1997 Appropriations Act.  Plaintiff clearly asserts in her Amended Complaint that the Special

Projects Team "was responsible for developing and implementing strategies to resolve

outstanding audit findings and internal control weaknesses as stated in the management letter of

the audit report."  Am. Compl. ¶ 20.  Plaintiff has therefore clearly alleged that the Special

Project Team was tasked with and responsible for "accounting, budget [and/or] financial

management."  Moreover, while Plaintiff now directs the Court to a copy of her discrimination

complaint before the District of Columbia Office of Human Rights (hereinafter, "OHR

complaint") as indicating to the contrary, the Court notes that the OHR complaint in fact

similarly alleges that the Special Projects Team "was responsible for developing and

implementing strategies to resolve outstanding management letter and internal control comments

for prior audits."  *See* Pl.'s DP Surreply, Ex. A (discrimination complaint) at ¶ 2.

Plaintiff attempts to avoid this outcome by focusing on her description in the newly

attached OHR complaint of some of the particular projects she worked on as a member of the

Special Projects Team in the weeks before her termination.  *See id.* at 4.  Specifically, Plaintiff

indicated in her OHR complaint that she "worked on projects including the establishment and

coordination of meetings for the Management Information Systems Subcommittee and the Board

Process Reengineering Subcommittee; the development of the citywide Audit Tracking Report

and the Agency Response Report; and the coordination of meetings for [her] assigned subcommittees." *Id.*, Ex. A (OHR complaint) at ¶ 11. Plaintiff now argues that "[t]hese projects appear not to have been budget and/or financial functions," or, "[i]n the alternative, more discovery is needed to make this determination." *Id.* at 4. Contrary to Plaintiff's present claims, however, the Court easily concludes that these project descriptions — particularly when viewed in light of the Special Projects Team's overarching responsibilities as alleged in the Amended Complaint — implicate issues relating to accounting, budgeting, and financial management. Plaintiff's claim that "more discovery is needed" in order to make this determination is similarly dubious; Plaintiff herself is obviously in the best position to know what responsibilities she was assigned as a member of the Special Projects Team and yet she offers no affidavit or declaration in support of her present argument that these projects did not involve budgetary or financial matters. More importantly, even if the Court were to agree with Plaintiff that her work on the Special Projects Team included projects on nonfinancial matters, Plaintiff has offered no support for her apparent claim that application of section 142 of the 1997 Appropriations Act turns upon the nature of the specific projects the individual employee is working on at the time of his or her termination rather than the nature of the employees' general duties and responsibilities nor is the Court so persuaded. Rather, the Court finds that even if her work included some non-financial projects, Plaintiff — as a staff member on the Special Projects Team — qualified as "accounting, budget and financial management personnel."

Third and finally, Plaintiff appears to contend that her interpretation of section 142 (i.e., that she did not qualify as an at will employee at the time of her termination) is supported by the

fact that her "separation letter contains components that an 'at-will' employee would not have."

Pl.'s DP Supp. Opp'n at 3.  For example, Plaintiff alleges that the separation letter provided that

her termination was effective 30 days from receipt, rather than immediately; that the separation

letter advised Plaintiff of her appeal rights; and that the separation letter did not state a reason for

her termination.  *Id*. at 3-4.  As an initial matter, Plaintiff has not provided the Court with any

legal authority in support of her assertion that these provisions constitute protections that "an at-

will employee would not have."  While Plaintiff appears to assume that the proposition is self-

evident, the Court disagrees.  There is no reason why provision of a 30-day notice period is

inherently inconsistent with at will status and the fact that Plaintiff was not provided a reason for

her termination is surely consistent with a finding that she was an at will employee subject to

termination at any time and for any reason.  More importantly, however, "a constitutionally

protected property interest in continued employment only arises when a plaintiff can demonstrate

a legitimate claim of entitlement to the benefit in question."  *Menkes v. Dep't of Homeland

Security*, 486 F.3d 1307, 1311 (D.C. Cir. 2007).  Section 142 of the 1997 Appropriations Act, by

converting Plaintiff to an at will employee, eliminated any "legitimate claim of entitlement"

Plaintiff may have had in her job.  Plaintiff's apparent belief that she nonetheless had a legitimate

expectation of continued employment based upon various statements in her separation letter —

provided at the termination, rather than the outset, of her employment — is without merit.  *Cf.

Doe v. Gates*, 981 F.2d 1316, 1320-21 (D.C. Cir. 1993) (rejecting claim by CIA employee that

statements in Agency handbook and by Agency employees endowed him with a property interest

in his job notwithstanding federal statutory provision providing the CIA Director with discretion

to terminate him at will) ("The law is clear that if a statute relegates termination decisions to the discretion of the Director, no property entitlement exists, and any [] statements to the contrary have no binding force.").

Accordingly, the Court finds that Plaintiff was subject to the terms of section 142 of the 1997 Appropriations Act at the time of her termination and was therefore an at will employee. As such, Plaintiff had no property interest in continued employment. *Hall*, 856 F.2d at 265. For this reason, Plaintiff's claim that Defendants unlawfully terminated her from her position with the District without due process in violation of the Fifth Amendment must be DISMISSED for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV.  CONCLUSION

For the reasons set forth above, the Court finds as follows. First, with respect to the District's [31] Motion to Dismiss, which was previously held in abeyance with respect to Plaintiff's FCA retaliation claim, the Motion is DENIED WITH PREJUDICE insofar as the District argues that Plaintiff has failed to sufficiently allege that she was retaliated against in violation of the FCA, but is DENIED WITHOUT PREJUDICE insofar as the District argues that Plaintiff's FCA claim is time-barred. The parties shall submit supplemental briefing on the question of the appropriate statute of limitations for Plaintiff's FCA retaliation claim consistent with this Memorandum Opinion and as provided for in the accompanying Order. Second, the District's [38] Supplemental Motion to Dismiss Plaintiff's due process claim is GRANTED and Plaintiff's claim that her termination deprived her of her property interest in continued employment without due process in violation of the Fifth Amendment is dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(6).  In addition, Plaintiff shall file a notice with the Court, by no later than **June 1, 2010**, providing either proof of timely service as to the Individual Defendants or an explanation as to why service was not timely made.  Failure to do so may result in dismissal of Plaintiff's claims against the Individual Defendants only in their individual capacities.  Finally, Plaintiff's [40] Second Amended Complaint shall be STRICKEN from the record.

Date: May 13, 2010

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge