# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **THERESA WESTON SAUNDERS**, <br><br> *Plaintiff*, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, *et al.*, <br><br> *Defendants*. | Civil Action No. 02-01803 (CKK) |

## MEMORANDUM OPINION
(June 6, 2011)

Plaintiff Theresa Weston Saunders ("Saunders") commenced this action against the District of Columbia (the "District"), and two District officials, alleging among other things that she was retaliated against in violation of the Federal False Claims Act (the "F-FCA"), 31 U.S.C. §§ 3729 *et seq.*, for disclosures she purportedly made concerning the use and management of federal funding by the District's Office of Chief Technology Officer.[1] Presently before the Court is the District's [77] Renewed Motion to Dismiss Plaintiff's Federal False Claims Act Retaliation Claim as Time-Barred ("Motion to Dismiss"). The focus of the District's motion is narrow—the District argues only that Saunders failed to bring suit within the limitations period governing F-FCA retaliation claims. The extent of the parties' dispute is similarly narrow and presents a pure question of law: the District argues that a one-year limitations period applies, while Saunders maintains that a three-year limitations period applies. The parties are in agreement that Saunders' claim is untimely if the District is correct and timely if Saunders is correct.

---

[1] While Saunders is pursuing other claims in this action, this memorandum opinion only addresses her F-FCA retaliation claim.

Accordingly, the sole issue before the Court is the appropriate limitations period. Upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the Court agrees with Saunders that her F-FCA retaliation claim is subject to a three-year limitations period. Based on that conclusion, the Court will deny the District's motion.

## I. BACKGROUND

Because this motion turns on a pure question of law, the Court will limit itself to providing some context for its decision. The Court assumes familiarity with its prior opinions in this action, which set forth in detail the background of this case.

### A. *Factual Background*

Saunders was employed by the District in various capacities from 1982 through 2000. *See* Am. Compl., ECF No. [18], ¶¶ 5, 10, 33. During her tenure in the Office of Chief Technology Officer, which occurred at the tail-end of her employment, Saunders allegedly discovered and reported numerous deficiencies in the District's use and management of federal funding. *Id.* ¶¶ 14, 32, 47. Her actions allegedly led to a series of reprisals, culminating in her termination in the summer of 2000. *Id.* ¶¶ 14-32.

### B. *Procedural Background*

Saunders commenced this action on September 11, 2002. *See* Compl., ECF No. [1]. The District moved for dismissal early on. *See* Def.'s Mot. to Dismiss, ECF No. [9]. When Saunders in turn moved to amend her Complaint, the Court granted Saunders leave to file an amended complaint and denied the District's motion to dismiss without prejudice. *See* Order (Mar. 23, 2004), ECF No. [30]. The District later filed a renewed motion to dismiss. *See* Def.'s Mot. to Dismiss, ECF No. [31]. The Court resolved the majority of the District's motion, but held the

motion in abeyance insofar as it sought dismissal of Saunders' F-FCA retaliation claim, directing the parties to submit further briefing on the sufficiency of Saunders' factual allegations and the applicable statute of limitations. *See Saunders v. District of Columbia*, 2005 WL 3213984, at *7-8 (D.D.C. Oct. 25, 2005). Upon consideration of the parties' supplemental briefing, the Court concluded that Saunders' factual allegations were sufficient to state a claim for retaliation under the F-FCA. *See Saunders v. District of Columbia*, 711 F. Supp. 2d 42, 56-57 (D.D.C. 2010). At the same time, the Court again found that the parties' briefing on the statute of limitations question was "woefully inadequate," preventing the Court from resolving the question on the record created by the parties. *Id.* at 53. The Court proceeded to outline the key questions that needed to be addressed, and again directed the parties to submit further briefing. *See id.* at 53-56.

The matter now comes before the Court upon the filing of the parties' second round of supplemental briefing on the statute of limitations question. *See* Def.'s Mem. of P. & A. in Supp. of Renewed Mot. to Dismiss, ECF No. [77-1]; Pl.'s Opp'n to Def. District of Columbia's Renewed Mot. to Dismiss, ECF No. [79]; Def.'s Reply to Pl.'s Opp'n to Def.'s Renewed Mot. to Dismiss, ECF No. [83]. The matter is fully briefed and ripe for a decision.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed.

3

R. Civ. P. 12(b)(6). "If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### III. DISCUSSION

Broadly speaking, the F-FCA confers a private cause of action upon an individual who has been retaliated against by her employer for engaging in activity that could reasonably lead to a viable false claims action. *See* 31 U.S.C. § 3730(h). Until relatively recently, Congress had never specified the limitations period governing F-FCA retaliation claims, requiring courts to "borrow" the statute of limitations applicable to the closest analog under state law. This motion turns on a pure question of law—what is the limitations period that should apply to Saunders' F-FCA retaliation claim? The District argues that a one-year limitations period should apply; Saunders counters that a three-year limitations period should apply. Resolution of this disagreement is dispositive of this motion; the parties are in agreement that Saunders' claim is untimely if the District is correct, and timely if Saunders is correct.

The Court agrees with Saunders that her claim is subject to a three-year statute of limitations. In explaining why, the Court will divide its discussion into two parts. The Court will first ask whether there is even a need to "borrow" a statute of limitations from state law now that Congress has specified that F-FCA retaliation claims are subject to a three-year statute of limitations. Thereafter, the Court will explain why resolving that particular question is ultimately unnecessary. Even if the Court were to "borrow" a statute of limitations from District of Columbia law, it would borrow a three-year statute of limitations.

4

### A. Because Congress Has Now Specified that a Three-Year Limitations Period Governs F-FCA Retaliation Claims, "Borrowing" a State Statute of Limitations Is Arguably Inappropriate

In ascertaining the statute of limitations applicable to a federal cause of action, the first question that must be asked is whether Congress has supplied a limitations period. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414 (2005). Unsurprisingly, only when Congress has failed to supply a limitations period for a federal cause of action may one be "borrowed" from another source. *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989). Therefore, the threshold question for the Court is whether Congress has specified the statute of limitations governing F-FCA retaliation claims.

In 2005, the Supreme Court answered this very question, concluding that Congress had not supplied a statute of limitations for F-FCA retaliation claims, and directing that courts should instead "borrow" the statute of limitations governing the closest analog under state law. *Graham Cnty.*, 545 U.S. at 417-18. Since then, however, Congress has enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Dodd-Frank Act" or the "Act"), Pub. L. No. 111-203, 124 Stat. 1376, which amended the F-FCA to supply an express statute of limitations for F-FCA retaliation claims.[2] As a result, the F-FCA now provides that "[a] civil action under [the F-FCA's anti-retaliation provisions] may not be brought more than 3 years after the date when the retaliation occurred." 31 U.S.C. § 3730(h)(3).

---

[2] The amendment was a small part of the Dodd-Frank Act, which spans 2,319 pages and has been described as "sprawling." *Pezza v. Investors Capital Corp.*, __ F. Supp. 2d __, 2011 WL 767982, at *1 (D. Mass. Mar. 1, 2011). As one court has observed, the legislative history of the Act "focus[es] on the bounty provisions . . . and contain[s] very few substantive discussions of its anti-retaliation provisions." *Egan v. TradingScreen, Inc.*, 2011 WL 1672066, at *4 (S.D.N.Y. May 4, 2011).

The effect of the amendment upon the timeliness of Saunders' F-FCA retaliation claim presents a difficult question. Analytically, the issue may be approached in at least two ways. One way is to ask whether the statute of limitations should be applied retroactively in this case, even though the amendment was not in effect either at the time Saunders' cause of action accrued or at the time she commenced this action. However, because statutes of limitations "lie on the cusp of the procedural/substantive distinction," a court must keep in mind that their retroactive application may upset legitimate reliance interests. *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 892 (2d Cir. 1995) (Cabranes, J., concurring). At the same time, the concerns that accompany the retroactive application of a statute of limitations may be less pronounced where, as here, "there had been no authoritative specification of which statute of limitations [previously] applied." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662-63 (1987). In this case, the question of which statute of limitations applied to F-FCA retaliation claims prior to the enactment of the Dodd-Frank Act is one of first impression in this Circuit, *see infra* Part III.B, meaning that neither Saunders nor the District can lay claim to any concrete reliance interests. Further compounding the uncertainty, courts in other circuits have reached wildly divergent conclusions about which statute of limitations should apply to F-FCA retaliation claims. *See infra* Part III.B. Under these unique circumstances, there is at least some basis for suggesting that the three-year statute of limitations supplied by Congress in the Dodd-Frank Act should be applied retroactively to evaluate the timeliness of Saunders' pre-amendment F-FCA retaliation claim.[3]

---

[3] To date, only two courts have addressed the retroactivity question in this context. One declined to resolve the issue on the merits. *See Lindsay v. Technical Coll. Sys. of Georgia*, 2011 WL 1157456, at *6 (N.D. Ga. Mar. 29, 2011). A second held that the statute of limitations prescribed by the Dodd-Frank Act should not be applied retroactively. *See Riddle v. DynCorp Int'l Inc.*, 733 F. Supp. 2d 743, 747-48 (N.D. Tex. 2010). That court's holding rested largely on

A second way of approaching the issue is to ask whether, separate and apart from the pure retroactivity question, the "borrowing" doctrine even applies where Congress later steps in to fill the interstices in a statutory scheme but remains silent as to how its gap-filling measures apply to past conduct. In this regard, the Court is mindful of the Supreme Court's admonition that courts, when tasked with closing interstices in federal law, should "borrow no more than necessary," including when they are asked to determine the statute of limitations applicable to a federal cause of action. *West v. Conrail*, 481 U.S. 35, 39 (1987); *see also Brown v. United States*, 742 F.2d 1498, 1504 (D.C. Cir. 1984) (en banc) ("Because the practice of borrowing presupposes a need to fill a deficiency in the federal scheme, a court must first look to see if there is indeed such a deficiency."), *cert. denied*, 471 U.S. 1073 (1985). The rationale for this limiting principle is simple. The "borrowing" doctrine is designed to best effectuate the federal policies embodied in a federal cause of action when Congress has not itself supplied the complete legal framework necessary for the effectuation of those policies; but when Congress has supplied the framework, "borrowing" is unnecessary. Through the Dodd-Frank Act, Congress has brought its judgment to bear on how best to effectuate the policies underlying the F-FCA's anti-retaliation provisions,

---

its conclusion that Congress' statement that the Act was "to take effect one day *after* its passage" should be construed as an affirmative statement that the amendment "is *not* retroactive." *Id.* at 748 (emphasis in original). That reasoning is in tension with Supreme Court precedent. *See Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 318 (2001) ("[T]he mere promulgation of an effective date for a statute does not provide sufficient assurance that Congress specifically considered the potential unfairness that retroactive application would produce."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 257 (1994) ("[S]tatement[s] that a statute will become effective on a certain date do[] not even arguably suggest that it has any application to conduct that occurred at an earlier date."). Meanwhile, the court did not expressly consider whether the retroactive application of the three-year statute of limitations would undermine the parties' reliance interests. The court's decision is presently on appeal to the United States Court of Appeals for the Fifth Circuit.

and in exercising that judgment, it has determined that a three-year statute of limitations is the best means of effectuating those policies. *See* 31 U.S.C. § 3730(h)(3). Given this development, it would be strange indeed to "borrow" the statute of limitations applicable to the closest analog under state law in an attempt to mimic the decision-making process that Congress has itself now performed—namely, balancing the policy considerations implicit in enacting a limitations period. In other words, the F-FCA now "stands on its own, . . . and contains all the needed mechanisms to guarantee its effectiveness in forwarding the underlying federal policy." *Am. Tel. & Tel. Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 500 (S.D.N.Y. 1990). However, the Court is not aware of any precedent from this Circuit or another that has eschewed the "borrowing" doctrine in this particular context—that is, when Congress has stepped in to fill the interstices in a statutory scheme but has remained silent as to how its gap-filling measures apply to past conduct.

Regardless of which analytical tack is taken, the effect of the Dodd-Frank Act upon the timeliness of Saunders' F-FCA retaliation claim presents novel and difficult questions about when a court may rely upon subsequent congressional enactments to fill the gap in the statutory scheme in effect at the time an action is commenced. Unfortunately, despite having been admonished by the Court in the past for failing to address the effect of amendments to the F-FCA (including this specific amendment), neither party has bothered to brief the question of whether the Dodd-Frank Act affects the limitations period applicable to Saunders' F-FCA retaliation claim. For the reasons set forth above, there is some reason to believe that Congress' specification of the applicable statute of limitations in the Dodd-Frank Act obviates the need to resort to the "borrowing" doctrine as to Saunders' pre-amendment F-FCA retaliation claim. But the answer is by no means self-evident, and because the parties have failed to brief the issue, the

8

Court declines to reach a conclusion on the merits. Fortunately, the uncertainty is ultimately immaterial, because the result would be the same regardless of whether the Court applied the three-year statute of limitations in the Dodd-Frank Act or instead "borrowed" the statute of limitations governing the closest analog under state law. As set forth immediately below, *see infra* Part III.B, the closest analog to an F-FCA retaliation claim under District of Columbia law is also governed by a three-year statute of limitations.

> **B.** ***To the Extent "Borrowing" a State Statute of Limitations is Even Necessary, the Three-Year Statute of Limitations Applicable to Retaliation Claims Arising Under the District of Columbia False Claims Act Would Apply***

When "borrowing" a statute of limitations becomes necessary, the district court will ordinarily apply the limitations period that would govern the state law claim that is most analogous to the federal cause of action at issue. *Cephas v. MVM, Inc.*, 520 F.3d 480, 484 (D.C. Cir. 2008). State law is always the "lender of first resort," and the presumption favoring state law may be overcome only where the application of the state limitations period would frustrate or interfere with federal policies or be at odds with the purpose or operation of the underlying federal statute. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995). In that rare event, the district court must instead "borrow" a limitations period from the most analogous federal statute. *Cephas*, 520 F.3d at 485.

The first task before the Court, therefore, is to determine which cause of action under District of Columbia law is the closest analog to F-FCA retaliation claims. This is a question of first impression in this Circuit.[4] It is, moreover, one that is unlikely to be revisited given that

---

[4] Several courts in other jurisdictions have addressed the question, and in so doing have reached varying conclusions. *See U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, __ F. Supp. 2d __, 2011 WL 816632, at *8-9 (N.D. Tex. Mar. 9, 2011) (borrowing 180-day statute of limitations

9

Congress has since amended the F-FCA to specify that F-FCA retaliation claims are subject to a three-year statute of limitations.

The Court agrees with Saunders that the anti-retaliation provisions of the District of Columbia False Claims Act ("DC-FCA"), D.C. Code §§ 2-308.13 *et seq.*, are more analogous to the anti-retaliation provisions of the F-FCA than any of the other candidates identified by the

---

applicable to state whistleblower claims by hospital employees in lieu of the two-year "catch-all" limitations period); *U.S. ex rel. Zemplenyi v. Grp. Health Coop.*, 2010 WL 3584444, at *3 (W.D. Wash. Sept. 10, 2010) (borrowing three-year "catch-all" statute of limitations without discussing alternatives); *Riddle v. DynCorp Int'l Inc.*, 733 F. Supp. 2d 743, 745-48 (N.D. Tex. 2010) (borrowing 90-day statute of limitations applicable to state whistleblower claims in lieu of the limitations period applicable to personal injury actions); *U.S. ex rel. Suter v. Nat'l Rehab Partners Inc.*, 2009 WL 3151099, at *2-3 (D. Idaho Sept. 24, 2009) (borrowing 180-day limitations period applicable to state whistleblower claims by public employees in lieu of "catch-all" limitations period); *Campion v. Ne. Utils.*, 598 F. Supp. 2d 638, 645-53 (M.D. Penn. 2009) (borrowing two-year "catch-all" statute of limitations applicable to personal injury actions in lieu of the limitations period applicable to state whistleblower claims and wrongful discharge claims); *U.S. ex rel. Smart v. Christus Health*, 626 F. Supp. 2d 647, 657-58 (S.D. Tex. 2009) (borrowing 180-day statute of limitations applicable to state whistleblower claims brought by hospital employees in lieu of the two-year "catch-all" limitations period); *Rutz v. Village of River Forest*, 2007 WL 3231439, at *3-5 (N.D. Ill. Oct. 25, 2007) (borrowing one-year statute of limitations applicable to tort claims brought by governmental employees in lieu of limitations periods applicable to personal injury claims and retaliatory discharge claims); *U.S. ex rel. Smith v. N.Y. Presbyterian Hosp.*, 2007 WL 2142312, at *12 (S.D.N.Y. July 18, 2007) (borrowing three-year statue of limitations applicable to personal injury actions in lieu of limitations period applicable to state whistleblower claims); *U.S. ex rel. Hinden v. UNC/Lear Servs., Inc.*, 362 F. Supp. 2d 1203, 1207-09 (D. Haw. 2005) (borrowing 90-day statute of limitations applicable to state whistleblower claims in lieu of limitations period applicable to state wrongful discharge claims); *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 99-102 (D. Conn. 2006) (borrowing three-year statute of limitations applicable to state wrongful discharge claims in lieu of limitations period applicable to state whistleblower claims); *U.S. ex rel. Ackley v. Int'l Bus. Machs. Corp.*, 110 F. Supp. 2d 395, 402-05 (D. Md. 2000) (borrowing three-year statute of limitations applicable to state wrongful discharge claims in lieu of limitations period applicable to administrative retaliation actions); *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1035 (9th Cir. 1998) (borrowing one-year statute of limitations applicable to state wrongful termination claims without discussing alternatives). Given that the objective of the "borrowing" doctrine is to find the closest analog under applicable state law, which will vary by jurisdiction, authorities engaging in this analysis in other jurisdictions are of limited persuasive value.

10

parties,[5] and that borrowing the three-year statute of limitations applicable to claims brought under the anti-retaliation provisions of the DC-FCA fully comports with the overarching design of the F-FCA. Both the DC-FCA and the F-FCA are designed to discourage fraud against the government and, to that end, both prohibit an employer from taking an adverse employment action against an employee as a result of the employee's participation in protected activity pertaining to false claims (which under both statutes encompasses, broadly speaking, any activity that could reasonably lead to a viable false claims action). Indeed, a side-by-side comparison of the two statutes reveals that they are virtually identical in scope:[6]

|  | DC-FCA | F-FCA |
| --- | --- | --- |
| **COVERED INDIVIDUALS** | Any "employee." D.C. Code § 2-308.16(b). | Any "employee." 31 U.S.C. § 3730(h) (2002). |
| **COVERED ENTITIES** | Any "employer, including the District of Columbia." D.C. Code § 2-308.16(b). | Any "employer," whether public or private. 31 U.S.C. § 3730(h) (2002). |

---

[5] While the Court will limit its discussion here to the candidates identified by the parties, the Court has not identified a closer analog through its independent research.

[6] While neither party directly addresses the question, the proper focus for comparison is the F-FCA in the form that it existed at the time Saunders' cause of action accrued and at the commencement of this action. As explained in greater detail below, *see supra* Part III.A, if the Court were to look at the F-FCA in the form that it exists today, there would be no need to "borrow" a statute of limitations at all, since Congress has since amended the F-FCA to specifically provide for a three-year statute of limitations. *See* 31 U.S.C. § 3730(h)(3). But the distinction is ultimately academic; even in its amended form, the F-FCA's closest analog under District of Columbia law remains the DC-FCA, as the anti-retaliation provisions under the two statutes are nearly coterminous in scope to this day. *Compare* D.C. Code § 2-308.16(b)-(c), *with* 31 U.S.C. 3730(h)(1)-(2).

| PROTECTED ACTIVITY | "[L]awful acts done by the employee on behalf of the employee or others in disclosing information to a government or law enforcement agency relating to, or in furtherance of, a false claims action, including investigation of, initiation of, or testimony or assistance in, an action to be filed pursuant to [D.C. Code] § 2-308.15." D.C. Code § 2-308.16(b). | "[L]awful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h) (2002). |
|---|---|---|
| PROHIBITED CONDUCT | "[D]ischarg[ing], demot[ing], suspend[ing], threaten[ing], harass[ing], or in any other manner discriminat[ing] against an employee in the terms and conditions of employment." D.C. Code § 2-308.16(b). | "[D]ischarg[ing], demot[ing], suspend[ing], threaten[ing], harass[ing], or in any other manner discriminat[ing] against [the employee] in the terms and conditions of employment." 31 U.S.C. § 3730(h) (2002). |
| AVAILABLE RELIEF | "[T]he relief necessary to make the employee whole, including reinstatement with the same seniority status that the employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, compensation for any special damage sustained as a result of the discrimination and, where appropriate (except in the case of the District), punitive damages," as well as "litigation costs and reasonable attorneys fees, necessarily incurred." D.C. Code § 2-308.16(c). | "[A]ll relief necessary to make the employee whole," "includ[ing] reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h) (2002). |

This substantial overlap between the DC-FCA and F-FCA comes as no surprise, given that the DC-FCA is indirectly based on the F-FCA. *See Grayson v. AT & T Corp.*, 980 A.2d 1137, 1146 n.25 (D.C. 2009), *vacated in part*, 989 A.2d 709 (D.C. 2010) (en banc) (per curiam). Indeed, this Court has previously had the opportunity to observe that the elements of the two causes of action are, if not identical, nonetheless "substantively similar," *Kakeh v. United Planning Org., Inc.*, 655 F. Supp. 2d 107, 115 n.5 (D.D.C. 2009), and, as a result, case law

interpreting the F-FCA's anti-retaliation provisions is instructive when evaluating the analogous provisions under the DC-FCA, *Payne v. District of Columbia*, __ F. Supp. 2d __, 2011 WL 1158724, at *6 n.4 (D.D.C. Mar. 29, 2011). More broadly, in light of the commonality between the two statutes, the courts of the District of Columbia will look to case law interpreting the F-FCA when tasked with construing the terms of DC-FCA. *See Grayson*, 980 A.2d at 1146 n.25.

For all these reasons, the anti-retaliation provisions of the DC-FCA provide an ideal candidate for purposes of "borrowing" a statute of limitations to govern F-FCA retaliation claims. Nonetheless, the District presses an alternative—namely, adopting the statute of limitations governing claims under the District of Columbia Whistleblower Protection Act (the "DC-WPA"), D.C. Code §§ 1-615.01 *et seq*. While the District's argument is not without some merit, as the DC-WPA admittedly shares some characteristics with the F-FCA's anti-retaliation provisions, the argument is unavailing. In the final analysis, the DC-WPA simply is not as analogous to the F-FCA's anti-retaliation provisions as are the nearly identical anti-retaliation provisions of the DC-FCA.

True, the DC-WPA is, like the F-FCA, broadly designed to encourage the reporting of waste or fraud in government. *See* D.C. Code § 1-615.51(1). However, the DC-WPA is at the same time both more expansive and narrower than the anti-retaliation provisions of the F-FCA: it protects a far narrower class of individuals; it covers a far narrower class of employers; it authorizes suits against individuals in their personal capacities; and it offers less robust remedies than the F-FCA. Whereas the F-FCA covers any employee, 31 U.S.C. § 3730(h) (2002), the protections of the DC-WPA may be invoked only by "a former or current District employee, or an applicant for employment by the District government," D.C. Code § 1-615.52(a)(3). Whereas

the F-FCA covers any employer, 31 U.S.C. § 3730(h) (2002), the DC-WPA applies to a single employer—the District of Columbia itself, D.C. Code § 1-615.54(a)(1). Whereas there is no individual liability under the F-FCA, *see U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 322 F.3d 738, 740-41 (D.C. Cir. 2003), the DC-WPA permits an action to be brought against "any District employee, supervisor, or official having personal involvement in the prohibited personnel action," D.C. Code § 1-615.54(a)(1). And whereas the F-FCA permits a plaintiff to recover double back pay, 31 U.S.C. § 3730(h) (2002), the DC-WPA only permits a plaintiff to recover single back pay, D.C. Code § 1-615.54(a)(1)(E).

But perhaps most importantly, the DC-WPA protects a considerably more expansive set of disclosures than the F-FCA, reflecting the distinct, if nonetheless similar, orientations of the two statutes. The anti-retaliation provisions of the F-FCA prohibit an employer from taking an adverse employment action against an employee as a result of the employee's participation in protected activity pertaining to the presentation of false claims, with the aim of encouraging disclosures that might prevent others from making false claims for money or property upon the government or knowingly submitting false statements in support of such claims. To effectuate this end, the F-FCA is sensibly targeted towards protecting disclosures and activities that could reasonably lead to a viable false claims action. *See U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998). Meanwhile, the penumbra of the DC-WPA extends over a much wider field, encompassing disclosures including: gross mismanagement; the gross misuse or waste of public resources; abuse of authority in connection with the administration of a public program or the execution of a public contract; the violation of a law or regulation or a term of contract with a government contractor; and substantial and specific dangers to the public health

and safety. *See* D.C. Code § 1-615.52(a)(6). As a result of these expansive protections, the DC-WPA may, for example, protect a government employee's disclosures concerning the stabling and negligent care of horses, *see Mentzer v. Lanier*, 677 F. Supp. 2d 242, 250 (D.D.C.), *aff'd*, 408 F. App'x 379 (D.C. Cir. 2010) (per curiam), something that runs far afield of the concerns of the F-FCA. The sheer breadth and diversity of the subject-matter protected by the DC-WPA reveals that the statute is concerned with more than preventing fraudulent claims upon the government's funds and property; rather, it is designed to encourage disclosures concerning a broad universe of government misconduct and public safety issues. In this way, the DC-WPA departs significantly from the F-FCA.

All of which should not be construed as suggesting that the DC-WPA is wholly dissimilar to the F-FCA. Quite the contrary, the two undoubtedly share similar aims and, in furtherance of those aims, create comparable private causes of action for retaliation. That conclusion, however, does not change the fact that District of Columbia law provides an even closer analog to the F-FCA in the form of the DC-FCA. For want of a better analogy, while the DC-WPA and F-FCA may be cousins, the DC-FCA and the F-FCA are siblings. As such, to the extent Congress may be said to have failed to supply a limitations period for retaliation claims under the F-FCA, the Court would borrow the statute of limitations period applicable to retaliation claims under the DC-FCA as the "state law claim that is most closely analogous to the federal claim in suit." *Cephas*, 520 F.3d 480 F.3d at 484 (quotation marks omitted). But like its federal counterpart, the DC-FCA does not specifically identify the statute of limitations governing retaliation claims. *See* D.C. Code § 2-308.17(a) (specifying the statute of limitations applicable to *qui tam* actions arising under D.C. Code § 2-308.15, but remaining silent on the limitations period applicable to

15

retaliation actions arising under D.C. Code § 2-308.16). Due to this statutory silence, retaliation claims under the DC-FCA are subject to the three-year "catch-all" statute of limitations under D.C. Code § 12-301(8). *See District Cablevision Ltd. P'Ship v. Bassin*, 828 A.2d 714, 729 (D.C. 2003) (providing that three-year "catch-all" statute of limitations applies to claims that "are not 'specially' governed by any other statute of limitations.") (quoting D.C. Code § 12-301(8)). Borrowing the three-year statute of limitations and applying it to the facts of this case, the parties agree that Saunders' F-FCA retaliation claim is timely.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Saunders' F-FCA retaliation claim is subject to a three-year statute of limitations. Because the parties agree that the claim is timely insofar as it is governed by a three-year statute of limitations, the District's [77] Motion to Dismiss will be denied. An appropriate order accompanies this memorandum opinion.

Date: June 6, 2011

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge